THE PEOPLE OF THE STATE OF CALIFORNIA, APPELLANTS, *v.* GEORGE W. WEBB, RESPONDENT.

CONSTITUTION—CONSTRUCTION OF.—The settled construction of a constitutional provision made before its adoption into the Constitution of this State should be held as the just interpretation thereof.

CONSTITUTIONAL LAW—CRIMINAL LAW.—If a party charged with an offense has been once acquitted by the verdict of a jury, he cannot be held to answer again for the same offense, no matter by what mistakes or errors on the part of the Court, jury or prosecution the acquittal was obtained.

IDEM.—If a party is once placed upon his trial before a competent Court and jury, upon a valid indictment, the "jeopardy" attaches, to which he cannot again be subjected, unless the jury be discharged from rendering a verdict by a legal necessity, or by his consent; or, in case a verdict is rendered, it be set aside at his instance.

CONSTRUCTION OF COMMON PRACTICE ACT.—By the just interpretation of that provision of the statute which gives to the people the right of appeal in criminal cases, it must be confined only to such cases in which errors in the proceedings may occur before legal jeopardy has attached to the accused.

APPEAL from the County Court of Sonoma County.

The case is stated in the opinion.

*Jo Hamilton,* Attorney General, for Appellants.

The declaration "that no person shall be subject for the same offense to be twice put in jeopardy of life or limb," as enunciated in Article V of the Amendments to the Federal Constitution, and in Section 8 of the Constitution of this State, "that no person shall be subject to be twice put in jeopardy for the same offense," has been passed and decided upon by not only all the Courts of our country, but, I may say, by almost all of the Courts of the civilized world. I frankly admit that if we take the weight of authority or the volume of precedents as guides in our examination of this question, that the opinions I insist upon here will be found to stand single and unsustained, while the *weight of the authority of ages* will be found on the other side. The modern decisions, following the beaten track of precedent, will also be found against me; but whether those modern decisions have the concurrence of the same reasons to sustain them as the ancient, is a matter of grave doubt.

The reason of this rule at first was apparent; originally an appeal, or a new trial, or a re-trial in a criminal proceeding, was unknown. In the early days of criminal jurisdiction, the defendant who was convicted, by the *nisi prius* Court, of crime, however gross the error committed by the Court in his trial, or however outrageous the judgment, from fraud, perjury, accident or mistake, had no other escape from punishment than the exercise of what was called *clemency, pardon, exoneration* from punishment by the exercise of *mercy* from the Crown. The benefit of clergy might, in some instances, be claimed, and this, when not applicable to his case, or when exhausted by him, was all the protection the defendant had. We see the wisdom of the original rule laid down—that no one should be "twice put in jeopardy." This rule was then understood to mean that no one could be twice *tried.* The discharge of a jury without a verdict

operated as an acquittal. The defendant could not be again tried, and any escape of the defendant, having been once on trial, was a final disposition of the case. So, also, any conviction of the defendant, once upon trial, however arrived at, was final. This was in the early and harsher days of the rule of the law, and, like the wager of battle, the test of witchcraft (sink or swim—if the subject sank and was drowned, she was no witch; if she swam, she was a witch, and was *only* burned), have, from reason and necessity, grown into disuse and disfavor, from the fact that while they may have satisfied the crude views and superstitions of the fathers, they fall far behind the march of modern civilization. They are relics of that barbarous age which gave the very life of the vassal, and even the person of his newly married wife, into the power and keeping of his paramount lord.

As civilization advanced, and the evils of a too stringent application of the criminal law made themselves apparent, a right of appeal was given the defendant in criminal cases, so that errors of law might be remedied. New trials were then unknown; the remedy was by appeal, and only on questions of law. New trials in criminal cases are of later date, and are an advance of one additional step toward our present system of jurisprudence. In many of the other States of our Union, and, indeed, I may say all of the States whose decisions are quoted in the respondent's brief, the right of appeal is not given the State at all. Our own statute (see Art. 2068, Sec. 481, Vol. 1, p. 299, Hittell's Digest) provides that " the party aggrieved in a criminal action, whether that party be the people or the defendant, may appeal as follows : * * * To the Supreme Court, from a final judgment of the District Court, in all criminal cases amounting to a felony, on questions of law alone, etc., etc.

The right to appeal on the part of the people is given by the statute, and is clearly a right in this case, unless inhibited by the clause in the Constitution cited.

The meaning of this clause in the Constitution is to be determined like the meaning of any other law.

The general rule in giving construction to clauses in the Constitution is, "that they are to be expounded in the same

way and according to the same rules as the statutes, only, being popular instruments, a less technical construction is to be given to their words and phrases." (Bishop, Criminal Law, Vol. 1, 66; *Manly* v. *State,* 7 Md. p. 135; *Greencastle Township* v. *Black,* 5 Ind. 557; *State* v. *Mace,* 5 Md. 337.)

I suggest to the Court that construing the Constitution by the rule here declared, and which consorts with the standard works upon constitutional law, that the precedents cited, as well as the reasons upon which they are based, are bound to fall to the ground.

Under the enlightened and more liberal practice in modern times, a criminal defendant has many advantages not known in the earlier criminal practice. He can testify in his own behalf. He has counsel who can be heard in his own behalf, while formerly his counsel could not be heard in argument at all. If dissatisfied with the judgment, he may move for a new trial; if that be refused, he can appeal, etc.

The reason for the old declaration, that he shall not be put twice in jeopardy, still remains; but the question as to how the term "jeopardy" is to be construed is, from the change in the system, different.

The provision that no one should be "put in jeopardy twice for the same offense," originally was founded in mercy, and was intended as a merciful interposition in behalf of one accused of crime. His jeopardy commenced when the jury were sworn. Why? Because that his *danger* commenced. It ended when the jury was discharged. Why? Because then his danger ceased; the verdict of the jury was the finality. But when the right of new trial and appeal was allowed a defendant, the jeopardy did not cease; the danger was not over when the jury were discharged. If he was convicted, he had still his further remedy of re-trial and appeal. The law, in further tenderness, said that he might have still a further opportunity of acquittal, and it held if his appeal was successful, for error committed against him, that he was not in jeopardy from the improper conviction, because of the error which had gotten into his trial, and the judgment, when reversed, or a new trial, if given, placed the

parties back where they were before the trial, with all the rights of a trial *de novo.*

*Haymond & Stratton,* for Respondents.

The principle of the rule against a "second jeopardy," is that the jury and not the judge is to determine when the attack of the State upon life or liberty shall cease. Its reason, the safety of the citizen. And the authorities which sustain this view of the rule, the adjudged cases of every land in which it obtains. Respondent invokes the protection of this rule, and his construction of it must be adopted, for it accords with the trinity of the law—Principle, Reason and Authority.

The Constitution of the Federal Union, and the Constitution of many of the States, contain substantially the same provision, namely : "No person shall be subject to be twice put in jeopardy for the same offense." Which provision had, before the adoption of the Constitution of this State, received judicial construction, and it should be held that the Convention which framed the organic law of this State, in adopting it, did so in view of such construction, and acquiesced in its correctness (*People* v. *Coleman,* 4 Cal. 46); but, at the very least, the solemn, deliberate precedents of the Courts, and the acquiescence of the people and governments of other States therein, under a similar constitutional provision, should possess controlling weight and influence in the determination of the question presented. (*Ferris* v. *Coover,* 11 Cal. 175.)

A wide difference of opinion has existed as to when jeopardy attaches within the meaning of this constitutional rule. In many of the States, it has been held to attach when the jury is sworn, and as a consequence, that if the jury thereafter separate or are discharged, without rendering a verdict, except by consent, or in case of such violent necessity as may be considered the act of God, such separation or discharge is a bar to all subsequent proceedings. (*Commonwealth* v. *Cook,* 8 Serg. & Rawle, 577 ; *Mahala* v. *State,* 10 Serg. 532 ; *Ned* v. *State,* 7 Porter, 188 ; *Wright* v. *State,* 5 Ind. 290.) The Court in each of the cases cited, founding its opinion on

the assumption that to be on trial was to be in jeopardy, within the meaning of the rule. In other of the States, it has been held that the discharge of the jury is a matter of pure discretion, and that when in the exercise of a sound discretion it takes place, it presents no impediment to a second trial; that the jeopardy contemplated by the rule does not attach until verdict is rendered (*People* v. *Goodwin*, 18 Johns. 187; *Moore* v. *State*, 1 Walker, 134; *Commonwealth* v. *Olds*, 5 Little. 140; *State* v. *Stone*, 2 Scam. 326; Story on the Constitution, 660); and this is the view taken by the Supreme Court of the United States (*U. S.* v. *Perez*, 9 Wheaton, 579), the same interpretation being placed on the provision in question as though it read "No man shall be twice tried for the same offense." Strong and cogent reasoning is brought to the support of either position, and were it an open question in this State, it might well be doubted to which side the weight of reason would incline the beam. But either position sustains the theory of respondent in this case; for whatever diversity of opinion has existed among the learned Judges as to the right and power of Courts to discharge juries from giving any verdict, except in cases of extreme necessity, all of them agree that the party is, in a legal sense, in jeopardy, when a lawful jury have once had charge of his offense, upon a good indictment, and have delivered themselves of the charge by verdict; and that "without the consent of the party upon whom the jeopardy has attached, no step in the proceedings can be taken backward" (Bishop's Cr. Law, 658); that if, through misdirection of the Judge in matter of law, or mistake of the jury, or their refusal to obey the instructions of the Court, or any other like cause, a verdict of acquittal is improperly rendered, "it can never afterward, on the application of the prosecutor, in any form of proceeding, be set aside and a new trial granted." (1 Bishop's Cr. Law, 658; 2 Sumner, 43.) The privilege secured is but a constitutional recognition of a maxim embedded in the very elements of the common law, "that a man shall not be brought into danger of his life for one-and the same offense more than once." It has ever-been deemed a privilege of inestimable value to the

citizen, and was, to use the language of Justice Story, "introduced into the Federal Constitution upon the soundest principles of prudence and justice." But whether existing as a constitutional guaranty, or as part of the common law, it has uniformly been construed as presenting an insurmountable barrier to a second trial, where there had been a verdict of acquittal regularly had upon a sufficient indictment. (2 Hawkins P. C. 10; 2 Hale's P. C. 181; 4 Blackstone's Com. 335–336; *Rex* v. *Silverton,* 1 Willis, 298; *Rex* v. *Fenwick,* 1 Sid. 153; *Rex* v. *Brice,* 1 Chit. 352; *Commonwealth* v. *Cummings,* 3 Cush. 212; *State* v. *Jones,* 7 Ga. 422; *State* v. *Kittle,* 2 Tyler, 471; 17 Mass. 515; *State* v. *Dark,* 8 Blackf. 526; *Emson* v. *State,* 1 Swan, 14; *State* v. *Martin,* 3 Hawks. 381; *State* v. *Wright,* 3 Brev. 421; *State* v. *Denton,* 1 Eng. 169; *State* v. *Burris,* 3 Texas, 118; *State* v. *DeHart,* 2 Halst. 172; *State* v. *McKee,* 1 Bailey, 651; *State* v. *Brown,* 16 Conn. 54; *State* v. *Anderson,* 3 S. & M. 751; *Rex* v. *Jones,* 8 Mod. 201; *Rex* v. *Cohen,* 1 Stark. 516; *Rex* v. *Sutton,* 5 B. & A. 52; *People* v. *Gilmore,* 4 Cal. 376; *People* v. *Backus,* 5 Cal. 278.)

Both the constitutional rule and common law maxim apply to and govern the case of a new trial. (*State* v. *Spear,* 7 Mo. 644; *State* v. *Baker,* 19 Mo. 683; *People* v. *Comstock,* 8 Wend. 640; *Jones* v. *State,* 15 Arkansas, 261; Wharton's Cr. Law, 3054.) As soon as a case is once fully committed to a jury, the fate of the prisoner is in their hands, and he stands in jeopardy of his life or liberty upon their verdict. "He is in the truest sense put upon his delivery from peril." If that verdict be against him, the modern authorities agree that there may be a new trial, on his motion, for, as the guaranty is for his benefit, he may waive it. (*People* v. *McKay,* 18 Johns, 212; Epes'·Case, 5 Grattan, 676; *State* v. *Abram,* 4 Ala. 272; *Lane* v. *People,* 5 Gilmer, 305; *Munroe* v. *State,* 5 Ga. 85; *Sutcliffe* v. *State,* 18 Ohio, 469; *Commonwealth* v. *Green,* 17 Mass. 517; *People* v. *Olwell,* 28 Cal. 456.) Granting a new trial is conclusive proof that errors were committed on·the first trial. Yet, that notwithstanding those errors, the defendant was in jeopardy, in its legal sense, on

the first trial, follows as a logical result from the only theory upon which a new trial is ever permitted; *i. e.* that the defendant may waive the guaranty of the rule or maxim, and consent *again* to be placed in jeopardy. (1 Bishop Cr. Law, 657–672.)

In England, writs of error were allowed at the instance of the Crown as well as at the instance of the defendant, but in .every case the maxim of the common law was held of binding force. If the writ was at the suit of the defendant, and well taken, a new trial was not granted, but a pardon advised and issued of course. (Note *a*, Frost's Case, 2 Moody C. C. R. 171.) If the writ was at the suit of the Crown, but after verdict, nothing could be done. In *Rex* v. *Lea* (2 Moody C. C. R. 9), the issue tendered by the prisoner was *autre fois aquit;* the jury *without evidence*, and against the charge of the Court, found the issue in favor of the prisoner. The case was reserved for consideration before all the Judges of England, and they were unanimously of the opinion that nothing could be done, except to discharge the prisoner. Why could nothing be done? Not for the reason that new trials were foreign to the English system of criminal jurisprudence, as has been sometimes erroneously asserted, for new trials were constantly granted in cases of misdemeanors (*Rex* v. *Simmons*, 1 Wils. 329; *Rex* v. *Bear*, 2 Salk, 646; *Rex* v. *Mawbey*, 6 T. R. 619–683; *Rex* v. *Tremaine*, 5 B. & C. 254; *Rex* v. *Davis*, 12 Mod. 9; *Rex* v. *Bennett*, 1 Stra. 101), and since Scaife's Case, in 1851 (2 Dennison C. C. R. 281), the English Courts have adopted the American doctrine of waiver, and grant new trials in cases of felony, at the instance of the defendant. But nothing could be done, because of the mandate of the common law maxim, which declared that "no man should be brought in jeopardy of his life more than once for the same felony." It was not a question of practice, but a question of power, and all the Judges of England held this maxim binding upon them, as we hold the constitutional provision binding on this tribunal.

It would not be contended that the common law rule could not be abrogated by statute. but the people, by solemn act, have made that rule part of the fundamental law. That a

legislative provision for the re-hearing of a criminal cause cannot be interpreted to violate the constitutional rule under consideration, whatever be the words in which the provision is expressed (1 Bishop's Cr. Law, 615), is a proposition that needs only to be stated to be at once admitted.

SPRAGUE, J., delivered the opinion of the Court:

The defendant was indicted for the crime of perjury; the trial was had in the County Court of Sonoma County, at the July Term thereof, 1868, and the jury returned a verdict of not guilty, whereupon the defendant was, by the judgment of the Court, discharged, from which judgment comes this appeal, in behalf of the people, upon the following bill of exceptions, certified by the Judge, and embodied in the record of the action:

"The defendant was tried for perjury. The indictment alleged that he committed perjury on the twelfth day of April, 1867, in testifying in the trial of a cause in which G. W. Webb was plaintiff and L. M. Warden was defendant. On the trial, the District Attorney offered the record on the trial of *Webb* v. *Warden* in evidence; defendant objected, on the ground that the record showed that the trial came off on the 11th April, 1867, whereas the indictment charged the crime to have been committed on the 12th of April, 1867. The Court sustained the objection, and the District Attorney excepted. The Court then instructed the jury to find the defendant not guilty, on the ground that there was no evidence showing that such a trial as *Webb* v. *Warden* ever transpired. The jury returned a verdict of not guilty. The District Attorney then moved the Court for an order remanding the prisoner to the custody of the Sheriff, to await the action of another Grand Jury, upon the ground that the acquittal was solely by reason of a variance between the proof and the indictment, and that a new indictment might be prepared. The Court overruled said motion and discharged the prisoner from custody, to which ruling the District Attorney duly excepted."

Upon this bill of exceptions, the attorney for the people assigns the following errors, for which he asks that judgment be reversed, and the cause remanded for a new trial:

*First*—The Court erred in sustaining the objections of

defendant to the introduction in evidence of the records of the trial of *Webb* v. *Warden,* named herein.

*Second*—The Court erred in instructing the jury to find the defendant not guilty.

*Third*—The Court erred in refusing to remand the defendant, and hold him to await the action of another Grand Jury.

If the ruling of the Court was correct, in rejecting the offered evidence, it was clearly right in its instruction to the jury, and its refusal to remand the defendant to the custody of the Sheriff; this was not a case of "variance between the proof and the indictment," in the sense contemplated by the 431st Section of the Criminal Practice Act, but a case where there was an entire want of evidence tending to establish the offense charged in the indictment, or any other offense.

The three assignments of error, then, are resolved into the simple question, whether the Court erred in excluding the offered evidence. But so far as the result of this appeal is to be affected, it is claimed on behalf of respondent that it is entirely immaterial whether, in rejecting this evidence, the Court below correctly or erroneously ruled, as the defendant having been once tried upon a valid indictment before a competent Court and jury, and acquitted, is forever protected from a re-trial on the same indictment, or any other indictment for the same offense, by virtue of that clause of Section 8, Article I, of our State Constitution which declares that "no person shall be subject to be twice put in jeopardy for the same offense."

The question thus presented is of most grave importance, and, so far as we are advised, has never been directly passed upon by this Court; hence, we have given it a most patient consideration, and after a careful examination of the authorities as to the construction of similar provisions in the Constitutions of other States, and the Constitution of the United States, we are entirely satisfied that this Court has no authority in criminal cases, under our State Constitution, to order a new trial of a defendant, at the instance of the prosecution, for mere errors in the ruling of the Court during the progress of the trial, after the jury have been charged with the case, and have rendered a verdict of not guilty. No case

has been called to our attention, and after a most diligent examination of authorities, we have not been able to find a single American case where a re-trial has been ordered or sanctioned by an appellate Court, at the instance of the prosecution, after the defendant had been once put upon his trial for an alleged felony, upon a valid indictment, before a competent Court and jury, and acquitted by the verdict of such jury; but we find a vast number of adjudications of the highest judicial tribunals of the different States, and many of the Federal Courts, to the effect that no such re-trial is authorized by the common law, and is directly interdicted by the Constitution of the United States, and also of most of the several States. The universal maxim of the common law of England, as Sir Wm. Blackstone expresses it, "*that no man is to be brought into jeopardy of his life more than once for the same offense,*" is embraced in Article V, of Amendments to the Constitution of the United States, and in the Constitutions of several States, in the following language : "*Nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb;*" and in many other States the same principle is incorporated in the organic law, in language substantially the same as hereinbefore quoted from the Constitution of this State. While the Constitutions of some few States are destitute of this or any similar provision, other State Constitutions, such as of New Hampshire, Rhode Island, New Jersey and Iowa, merely interdict a second trial for the same offense after acquittal.

The construction of this constitutional provision was well settled by a uniform course of decisions long before its incorporation into our State Constitution; hence, we must presume the provision was incorporated and adopted with a full knowledge of the judicial interpretation which similar provisions in other previous Constitutions had uniformly received, and with intent to adopt such interpretation as a principle expressed in the organic law of the State. (*People* v. *Coleman,* 4 Cal. 50; *Taylor* v. *Palmer,* 31 *Id.* 254.)

Again, in the application of this principle, it is upon reason and authority quite as well established, that when a party is once placed upon his trial for a public offense,

on a valid indictment, before a competent Court, with a competent jury, duly impanelled, sworn and charged with the case, he has then reached and is placed in the jeopardy, from a repetition of which, upon the same indictment, or any other indictment for the same offense, this constitutional shield forever protects him, and after the jeopardy has once so attached, a discharge of the jury, without the consent of the defendant, for any cause within the control of the Court, before they have rendered a verdict, is equivalent to a verdict of acquittal. (*State* v. *McKee*, 1 Bailey, 651 ; *Commonwealth* v. *Cummings*, 3 Cush. 212 ; *State* v. *Kittle*, 2 Tyler, 471 ; *State* v. *Davis*, 4 Black. 346 ; *State* v. *Bouche*, 5 *Id.* 154 ; *State* v. *Johnson*, 8 *Id.* 533 ; *Commonwealth* v. *Wade*, 17 Pick. 395 ; *Weinzorpflin* v. *State*, 7 Black. 186 ; *Wright* v. *State*, 5 Ind. 290 ; *Esmon* v. *State*, 1 Swan, 14 ; *Campbell* v. *State*, 9 Yerg. 333 ; *State* v. *Reynolds*, 4 Hayw. 110 ; *State* v. *Waterhouse*, 1 Mart. and Yerg. 278 ; *Slaughter* v. *State*, 6 Humph. 410 ; *Mahala* v. *State*, 10 Yerg. 535 ; *State* v. *Taylor*, 1 Hawks, 462 ; *State.* v. *Martin*, 3 *Id.* 381 ; *State* v. *Riley*, 2 Brev. 444 ; *State* v. *Wright*, 3 *Id.* 421 ; *State* v. *Hand*, 1 Eng. 169 ; *State* v. *Denton*, *Id.* 259 ; *State* v. *Burris*, 3 Tex. 118 ; *People* v. *Comstock*, 8 Wend. 549 ; *People* v. *Corning*, 2 Coms. 9 ; *State* v. *Brown*, 16 Conn. 54 ; *State* v. *Anderson*, 3 Smede and Marsh, 753 ; *State* v. *Spear*, 6 Mo. 644 ; *State* v. *Baker*, 19 *Id.* 683 ; *State* v. *Callendine*, 8 Iowa, 290 ; *State* v. *Kanouse*, 1 Spenc. 115 ; *State* v *De Hart*, 2 Halst. 172 ; *Commonwealth* v. *Cook*, 6 Serg. and R. 578 ; *Ned* v. *State*, 7 Porter, 188 ; *People* v. *Dill*, 1 Scam. 257 ; *Commonwealth* v. *Harrison*, 2 Va. Cases, 202 ; *United States* v. *Gibert*, 2 Sumn. 37 ; *United States* v. *Shoemaker*, 2 McLean, 114 ; 1 Chitty Cr. L, 657–8 ; 2 Russell on Crimes, 726 ; Arch. Cr. Pl. 619 ; 2 Whart. Am. Cr. L. Sec. 3054 ; 1 *Id.* 590 ; 1 Bish. C. L. Secs. 658, 660, 665 ; 1 Gr. and Wa, on N. T. 505–6 ; *People* v. *Gilmore*, 4 Cal. 376 ; *People* v. *Backus*, 5 *Id.* 278.)

The interpretation of this provision of our State Constitution urged by the Attorney General, is in direct conflict with the foregoing authorities ; and upon the point with reference to the statutory authority conferring upon the attorney of the people the right to his bill of exceptions,

and of appeal from the judgment of the trial Court, Mr.
Bishop, after a very full reference to authorities, remarks:
"A legislative provision for the re-hearing of a criminal cause
cannot be interpreted to violate the constitutional rule under
consideration, whatever be the words in which the provision
is expressed. When, therefore, the defendant has been once
in jeopardy, the jeopardy cannot be repeated without his
consent, whatever statute may exist on the subject. And so
the writ of error, or the like allowed to the State, can author-
ize the State to procure the reversal of erroneous proceed-
ings, and proceed anew only in those cases in which the first
proceeding did not create a legal jeopardy. For example,
if without a trial the Court quashes a valid indictment, or
gives the defendant judgment on demurrer, under the erro-
neous belief that it is invalid, a trial may be had after the
prosecution has procured a reversal of the judgment, be-
cause, as we have already seen, the prisoner is not in jeop-
ardy until the jury is impanelled and sworn. (1 Bish. Cr. L.
Sec. 665.) And, says Mr. Justice Duncan, in *Commonwealth
v. Cook* (*supra*), at p. 595, with reference to the proper inter-
pretation of a similar clause in the Constitution of Pennsyl-
vania: "It would be idle and unmeaning, if it merely intended
to protect the accused against a second trial, for it is a uni-
versal principle, not only in every crime, whatever be its
grade, but in personal actions, and in all questions of civil
right, that a verdict and judgment is a bar to all subsequent
proceedings for the same cause between the same parties or
privies. To make that, which was so plain and universal a
rule, a solemn article in a Constitution; to introduce it into
a bill of rights, declaring that to be one of the great and
essential principles of liberty and free government, unalter-
ably established, which was the law in even the most insig-
nificant offense, would be without use or meaning, and would
impute to the framers of the Constitution an ignorance of the
law, which cannot be justly ascribed to them."

We are, therefore, of opinion that under our Constitution,
which protects a party from a second jeopardy of life, limb,
liberty or property, for the same public offense, whatever its
grade, a person once placed upon his trial before a compe-

tent Court and jury, charged with his case upon a valid indictment, is in jeopardy, in the sense of the Contitution, unless such jury be discharged without rendering a verdict, from a legal necessity, or for cause beyond the control of the Court, such as death, sickness or insanity of some one of the jury, the prisoner or the Court, or by consent of the prisoner; and if such jury render a verdict or be discharged before a verdict, without such legal necessity, controlling cause or consent, the prisoner is forever protected from a re-trial upon the same or any other indictment for the same offense, unless, at his instance, the verdict be set aside or judgment be reversed; and, further, that the correct interpretation of our statute giving to the prosecutor a right to his bill of exceptions and appeal, when construed with reference to this provision of the Constitution, must be understood to have reference to such errors only as may occur in the preceedings before the legal jeopardy attaches. With these views, it follows that a reversal of the judgment in the present case would be vain and useless, as we are not authorized to direct or order a re-trial.

Judgment affirmed.

SAWYER, C. J., also delivered the following concurring opinion:

I am satisfied that the principle established by the authorities is, that the jeopardy attaches, within the meaning of the constitutional provision (subject, however, to some limitations or qualifications stated by Bishop in his work on Criminal Law, as deduced from the authorities), whenever, upon a valid indictment, a jury has been impanelled, sworn and charged with the case (1 Bish. Crim. Law, Sec. 658, *et seq;* Whart. Am. Crim. Law, Sec. 590); and that whenever the jeopardy has once attached against a party, the constitutional immunity has also attached, and it cannot be defeated without the act or consent of the party in jeopardy. Bishop well expresses the result of the decisions, thus: "But without the consent of the party upon whom the jeopardy has attached, no step in the proceedings against him can be

taken backward. If, through misdirection of the Judge in matter of law, or mistake of the jury or their refusal to obey the instruction of the Court, or any other like cause, a verdict of acquittal is improperly rendered, it can never afterward, on application of the prosecutor in any form of proceeding, be set aside and a new trial granted."

This construction of the constitutional provision, however, is not entirely satisfactory to my mind. It is difficult to see how the party can claim to have been in jeopardy, within any reasonable signification of the terms employed in the Constitution, when the very evidence which would tend to put him in jeopardy has been, on his objection and demand, erroneously excluded by the Court. The result is, that a criminal may escape conviction by means of an erroneous ruling excluding competent evidence, made at his request, and then avail himself of the acquittal thus erroneously obtained through his own wrong, to defeat a further prosecution of the indictment. But the construction of the constitutional provision was settled by a uniform course of decisions long before it was adopted in this State, and it must be presumed that the construction put upon it was intended to be adopted with the language construed. Such is the rule of construction in relation to Constitutions and statutes.

Whether the established construction is right or wrong, it will now be unprofitable to inquire further, for I should not feel at liberty to depart from it. The conclusion attained on this point renders it unnecessary to discuss the other questions presented by the record.

The judgment must, therefore, be affirmed.