[No. 740.]

## THE STATE OF NEVADA, RESPONDENT, *v.* J. W. ROVER, APPELLANT.

MURDER—VERDICT OF GUILT MUST STATE THE DEGREE.—A verdict which fails to designate the degree of murder, of which the jury find the defendant guilty, is so fatally defective that no judgment or sentence can be legally pronounced thereon.

JEOPARDY—WHEN IT DOES NOT ATTACH.—When the verdict in a criminal case is so defective that no judgment can be entered upon it, the defendant, who might have had it perfected, is considered as assenting to it, and as waiving any objections to being tried before another jury.

NEW TRIAL—POWER OF COURT TO GRANT.—Where the defendant in a criminal case is convicted and appeals, and the judgment is reversed: *Held,* that this court may order a new trial, although the defendant did not move for a new trial and denies the power of the court to grant it.

APPEAL from the District Court of the Fourth Judicial District, Humboldt County.

The facts are stated in the opinion.

*M. S. Bonnifield,* for Appellant.

*T. W. W. Davies,* also for Appellant.

I. Notwithstanding the crime charged in the indictment may be murder in the first degree, a verdict that the jury find the defendant guilty of the crime charged in the indictment is not such a designation of the degree of murder as the statute requires. They must expressly state the degree of murder in their verdict. The verdict in this case was bad, and no valid judgment could be rendered on it. (Comp. L., Sec. 2323; *People* v. *Marquis,* 15 Cal. 38; *People* v. *Campbell,* 40 Cal. 129; *People* v. *King,* 27 Cal. 507; *People* v. *Nichols,* 34 Cal. 217; *People* v. *Dolan,* 9 Cal. 576; *State* v. *Jones,* 20 Mo. 60; *Hogan* v. *State,* 30 Wisc. 428.)

II. The Constitution of this State provides that "No person shall be subject to be twice put in *jeopardy* for the same offense." (Const. Nev., Art. I, Sec. 8.) We submit that the defendant in this case has been once put in jeopardy, and in support of our views refer the court to the following

authorities : 1 Bishop's Cr. L., 5th ed., Secs. 1012–1047 ; Wharton's Am. Cr. L., Secs. 590, 3054; 1 Bish. Cr. L., Secs. 658, 660, 665; 2 Russell Cr. L., 726; Arch. 619; 1 Chitty's Cr. L. 657; 1 Gr. & W. New Trials, 505, 506; Bishop's Cr. L., Secs. 980–82; 38 Cal. 467, and cases cited; 44 Cal. 32; 26 Ark. 260; 20 Pick. 356, 364; 23 Miss. 261; 1 Bailey, 651; 9 Ala. 79; 2 Va. Cases, 345; 5 Rand. 669; 2 Mass. 172; 2 Cush. C. C. 153, 170; 13 Ired. 256; 3 Hawks. 613, 381; 1 Crawf. & Dix C. C. 185; 2 Ga. 60; 3 Ga. 53; 9 Ga. 316; 26 Ind. 346; 8 Iowa, 290; 2 Mill, 155; 1 Spence, 115; 13 Wend. 351; 2 Hals. 172; 2 McLean, 114; 2 Parker's C. C. 676; 8 Blackf. 540; 25 N. Y. 406; 23 Pick. 402; 2 Sumner, 19; 2 Tyler, 471; 6 Humph. 410; 10 Yerg. 535; 1 Hawks. 462; 3 Texas, 118; 4 Blackf. 446; 5 Blackf. 154; 7 Blackf. 186; 5 Ind. 290; 1 Dev. 491; 6 Serg. & R. 577; 11 Harris's Pa. 12; 3 Smedes & M. 756; 44 Ala. 9, 14, 393; 17 Pick. 395; 1 Swan, 14; 9 Yerg. 333; 4 Hayw. 110; 1 Mart. & Yerg. 278; 6 Mo. 644; 19 Mo. 683; 2 Brev. 444; 3 Brev. 421; 1 Eng. 169, 259; 2 Coms. 9; 16 Conn. 64; 7 Porter, 185; 1 Scam. 257; 1 Moody, 86; 4 Nev. 166.

III. The court having failed in its duty to require a proper verdict before discharging the jury, and the jury having been discharged without legal necessity before verdict, the legal effect is an acquittal. (*Klock* v. *People*, 2 Parker's C. C. 676; Bish. Cr. L., Secs. 1016, 1030 to 1041.)

*J. R. Kittrell, Attorney-General,* for Respondent.

I. The verdict of the jury is sufficient to warrant the judgment and sentence of the court. The jury did designate by their verdict that they found the defendant guilty of murder in the first degree, for they found him "guilty as charged," and he was *charged* with murder in the first degree.

II. The allegation in the indictment that "defendant, without authority of law and with malice aforethought, killed," etc., is the same as alleging that he killed Isaac N. Sharp with a deliberate, premeditated, preconceived design. (*People* v. *Clark,* 7 N. Y. R. 385; *Fitzgerald* v. *The*

*People*, 37 N. Y. R. 426; *People* v. *White*, 22 Wend. 167; *People* v. *Enoch*, 13 Wend. 159; *People* v. *March*, 6 Cal. 546.)

III. The court did not err in overruling defendant's motion in arrest of judgment and for the discharge of defendant. The defendant did not move upon any of the grounds mentioned in the statute. (Stats. 1875, 119, Sec. 8; 1 Comp. L., 496, Sec. 294; *People* v. *Indian Peter*, 48 Cal. 250; *Curtis* v. *State*, 26 Ark. 440.)

IV. The uniform practice which has been adopted in cases similar to this, where the jury failed to designate the degree of murder in their verdict, is to order a new trial. (15 Cal. 38; 13 Ark. 745; 11 Am. Rep. 575; 40 Cal. 140; Freeman on Judgments, Sec. 318.)

By the Court, EARLL, J.:

The defendant was indicted and tried in the district court of the fourth judicial district, Humboldt County, for the murder of one Isaac N. Sharp.

The jury returned a general verdict as follows: "We, the undersigned jurors in the case of the State of Nevada against J. W. Rover, defendant, indicted for the murder of I. N. Sharp, do find the said defendant guilty as charged."

The defendant moved in arrest of judgment upon the ground that the verdict was insufficient, because it did not specify the degree of murder of which the jury found him guilty, and for his discharge from custody, because he had been once placed upon his trial on a valid indictment, before a competent court, and with a jury duly impaneled, sworn and charged with the case. The motion was overruled, and thereupon the court pronounced judgment of death against the defendant.

This appeal is from the judgment and also from the order denying the motion in arrest of judgment and to discharge the defendant from custody.

By section 17 of the act relating to crimes and punishments (Comp. L., Sec. 2323), it is provided as follows: "All murder which shall be perpetrated by means of poison, or lying in wait, torture, or by any other kind of willful, de-

liberate and premeditated killing, or which shall be committed in the perpetration or attempt to perpetrate any arson, rape, robbery, or burglary, shall be deemed murder of the first degree; and all other kinds of murder shall be deemed murder of the second degree; and the jury before whom any person indicted for murder shall be tried, shall, if they find such person guilty thereof, designate by their verdict whether it be murder of the first or second degree; but if such person shall be convicted on confession in open court, the court shall proceed, by examination of witnesses, to determine the degree of the crime, and give sentence accordingly." By this statute, murder is divided into first and second degrees, depending upon the particular circumstances in which the crime is committed, and whether it be of the first or second degree is a fact to be specially found from the evidence adduced, without reference to any special facts which may be stated in the indictment. In case of a trial, the jury before whom the trial is had, if they find the defendant guilty, are required to find this fact, and to *designate by their verdict* whether the guilt be of the first or second degree; and in case of a plea of confession, the court is required to determine this question of fact by the examination of witnesses in open court. It is, therefore, apparent, from the plain and positive provisions of the statute, that a verdict which fails to designate the degree of murder of which the jury find the defendant guilty, is so fatally defective that no judgment or sentence can be legally pronounced thereon; and this interpretation of the statute not only accords with its plain and positive language, but is supported by a long train of decisions in other States having statutes the provisions of which are similar to the one under consideration.

In the case of *Cobia* v. *The State* (16 Ala. 781), the court say: "We think it very clear that the verdict of the jury does not warrant the sentence pronounced by the court. The verdict finds the accused guilty in manner and form as charged in the indictment. So, if the defendant had plead guilty, or confessed his guilt, the record would only have

shown that the prisoner was guilty of murder as charged, but in what degree would have been uncertain. In the latter case, however, the court could not have pronounced judgment, but it would have been necessary to impanel a jury to ascertain whether he was guilty of murder in the first or second degree, before sentence could have been pronounced against the prisoner. If the court cannot pronounce sentence against the prisoner on his plea of guilty as charged in the indictment, we do not see how sentence can be pronounced on a verdict of guilty as charged. The verdict only finds the facts charged to be true; the confession of guilt would equally ascertain the same facts to be true; but whether the accused was guilty in the first or second degree would be left equally uncertain whether he was found guilty by a jury, or confessed his guilt at the bar of the court."

So in the case of *The State* v. *Moran* (7 Iowa, 236), the Supreme Court of that State say: "It is said, however, that the indictment charges the crime of murder in the first degree, and that when the jury by their verdict found the defendant guilty as charged in the indictment, they did, in legal effect, ascertain that he was guilty in the degree charged. This argument, however, leaves it to the court to deduce the intention of the jury from a verdict, general in its language, whereas the law requires that the jury shall find specifically the fact, whether guilt is of the first or second degree. When jurors find by their verdict that a prisoner is guilty, or guilty as charged in the indictment, it is not assuming too much to say, that as a general thing they have simply found him guilty of a criminal homicide, without reference to the degrees of his guilt. And to say that upon such a verdict the court might properly conclude that they intended the highest offense, would be to presume against, instead of in favor, of human life." To the same effect are also the following decisions, rendered upon statutes nearly identical with the one under consideration: *People* v. *Marquis*, 15 Cal. 38; *People* v. *Dolan*, 9 Cal. 576; *People* v. *Campbell*, 40 Cal. 129; *State* v. *Dowd*, 19 Conn. 388; 3 Ohio

St. 89; *Parks* v. *State*, Id. 101; *McCauley* v. *The United States*, 1 Morris, 486; *Kirby* v. *The State*, 7 Yerg. 259; *McPherson* v. *The State*, 9 Yerg. 279; *Thompson* v. *The State*, 24 Ark. 323; *Allen* v. *The State*, Id. 333; *Ford* v. *The State*, 12 Md. 514; *Tully* v. *The People*, 6 Mich. 273; *McGee* v. *The State*, 8 Mo. 495; *State* v. *Upton*, 20 Mo. 400.

We might cite many other concurring decisions from the same and other States, but the above sufficiently manifest the uniformity of interpretation of the statute whenever its provisions have come under review. Indeed, the only decisions opposed to those above cited, which we have been able to find, are those of the Supreme Court of the State of Pennsylvania. In that State the court holds, that when the indictment charges the specific facts which, under the statute, constitute the crime of the first degree, that a verdict of "guilty in manner and form, as the prisoner stands indicted," does "ascertain" the murder to be of the first degree. The reason assigned is, "that the indictment is thus referred to as forming a part of the verdict, and the latter thus 'ascertains' the facts which in judgment of law amount to murder of the first degree." (*Johnson* v. *Commonwealth*, 12 Harris, 389; *White* v. *The Commonwealth*, 6 Binn. 179; *Commonwealth* v. *Earle*, 1 Whart. 525.) But if we apply the rule of these latter decisions to the case under consideration, and take into view both the verdict and indictment in order to determine the degree of which the jury intended to find the defendant guilty, we do not perceive how the court arrived at the conclusion that the jury intended to find the defendant guilty of the first degree, because the indictment contains none of the essential facts and circumstances which distinguish the first from the second degree, and is just as applicable to the one degree as it is to the other.

These Pennsylvania decisions, however, are not only opposed by the decisions of the courts of every other State having similar statutes, but seem to us to be contrary to the plain language and spirit of the act; and, in our opinion, the court is not authorized, in any case, to refer to the indictment in order to determine the degree of murder of

which the jury find the accused guilty; but on the contrary, that the true intent and purpose of the act were to impose upon the jury the duty of *designating by their verdict*, distinctly and unequivocally, the degree of the crime, and not leave it to be inferred or conjectured therefrom. It therefore follows that the verdict is fatally defective, and for that reason the judgment of the district court should be reversed.

The defendant, however, does not ask this Court to reverse the judgment and remand the cause for a new trial, but to reverse the judgment and order his discharge from custody.

If we understand the position of counsel for the defendant, it is, that while the Court may reverse the judgment on account of the defective verdict, it has no power to order a new trial of the cause; because, it is claimed, by another trial the defendant would be put in jeopardy twice for the same offense; and in support of their position they rely mainly on the opinion of Mr. Justice Story, 2 Sumner, 37, and the cases of *Commonwealth* v. *Cook et al.*, 6 Serg. & Rawle, 577; *Matter of Spier*, 12 N. C. 491; *Klock* v. *The People*, 2 Parker C. R. 676, and *The People* v. *Webb*, 38 Cal. 476.

In the case of *The United States* v. *Gibert*, Mr. Justice Story argued at great length to show that, when a trial has been regularly had, before a court of competent jurisdiction, upon a good indictment, and a verdict has been regularly rendered by a competent jury, the party cannot be tried a second time. It was the opinion of the learned justice that the provision of the Constitution of the United States which adopts the maxim of the common law that a man shall not be twice put in jeopardy of life or limb for the same offense, presented an insurmountable barrier to a second trial, even upon the application of the defendant himself. But in the same case, Judge Davis, though he concurred in denying a new trial upon the merits, dissented from that part of the opinion which denied the power of the court to grant a new trial on the merits, upon the applica-

tion of the defendant to reverse a verdict of conviction. Referring to that part of the argument of Mr. Justice Story which rests the denial of a power in the courts of the United States to grant a new trial on the merits in a capital case, though at the request of a person convicted, on the fifth article of amendments to the Constitution, declaring that "no person shall be subject, for the same offense, to be twice put in jeopardy of life and limb," Judge Davis said: "That article, in the amendments to the Constitution, corresponding to a rule of the common law, according to the prevailing spirit and character of those amendments generally, was doubtless intended for the security and benefit of the individual. As such it may be waived and relinquished. That the request of a prisoner for a new trial, affording a chance of escape from death to which a previous conviction would assign him, should be rejected, from adherence to the letter of the rule, that his life would be again in jeopardy, would present an incongruity not readily to be admitted."

It will be observed that, in the opinion of Mr. Justice Story, invoked in behalf of the defendant, he does not distinguish between the power of the court to grant a new trial, from the power to set aside the verdict, or to reverse the judgment, but denies, that in capital cases, the court has power to do either. On page forty-three of his opinion he says: "As soon as a capital case is fully committed to a jury, the life of the prisoner is in their hands, and he stands in jeopardy of his life upon the verdict of the jury. He is, in the truest sense, put upon his deliverance from peril. When once the verdict is pronounced the case is fixed. If there is a verdict of acquittal, it is generally agreed that he cannot be put upon his trial again for the same offense. And why? Because it contradicts the direct language of this maxim of the common law. He would again be put in jeopardy of his life. And how does the case at all differ in principle in the case of conviction? The fact is the same. He is again put in jeopardy of his life. He is again to be tried and acquitted or convicted. If it be

said that it is for his benefit and in favor of life to have a new trial, that may be true; but there is in the body of the maxim no such qualification or limitation of its meaning. It is nowhere laid down as a part of the maxim that if he is acquitted he shall not be tried again, but if he is convicted he may be allowed a new trial."

Thus, it will be perceived, that the conclusion to which the learned justice arrived was, that the court possessed neither power to set aside the verdict nor to grant a new trial; that the verdict of the jury was final; but if errors should intervene in the progress of the trial, he was of opinion that the prisoner would not be without redress, because he could apply to the executive for a pardon or mitigation of the sentence. But this opinion of Mr. Justice Story has come under review on frequent occasions in both the Federal and State courts, and we have been unable to find a single concurring opinion; but, on the contrary, find many opposed thereto. In the case of *The People* v. *Morrison* (1 Parker's Cr. R. 626), in which Mr. Justice Harris ably discusses the question of the power of the court to set aside a verdict and to grant a new trial, and referring to the opinion of Mr. Justice Story, he says: "Indeed, upon constitutional construction, Mr. Justice Story stands alone. Not a judge of any court in the United States has been found to concur in his views."

In the case of *The United States* v. *Harding* (Wallace, Jr., 127), where three defendants had been jointly indicted for murder, and one had been convicted of *murder* and the other two of manslaughter, they all joined in an application for a new trial, which was granted, although the effect was again to expose them all to a conviction for murder. Kane, district judge, delivered the opinion of the court, in which Mr. Justice Grier, of the Supreme Court of the United States, concurred. In referring to the opinion of Mr. Justice Story on the question involved, he said: "I am aware that one of the most eminent of our jurists has found an inhibition in the Constitution against the grant of new trials in cases involving jeopardy. But I cannot realize the cor-

rectness of the interpretation which, anxious to secure a citizen against the injustice of a second conviction, requires him to suffer under the injustice of a first. Certainly I would not subject the prisoner to the hazards of a new trial without his consent. If, being capitally convicted, he elects to undergo the sentence, it may be his right, as it was to have pleaded guilty to the indictment. When, however, he asks a second trial, it is to relieve himself from the jeopardy in which he is already; and it is no new jeopardy that he encounters when his prayer is granted, but the same divested of the imminent certainty of its fatal issue."

So, also, in the case of *The United States* v. *Keen* (1 McLean, 429), Mr. Justice McLean, of the Supreme Court of the United States, emphatically repudiated the constitutional construction for which Mr. Justice Story contended. "In favor of life," he says, "presumptions arise which seem to relax, and in fact sometimes do relax, the rigor of the law. But in the construction of the Constitution contended for, this maxim is reversed. The prisoner is found guilty by the jury, and, whether right or wrong, he must stand convicted. He claims, under the Constitution, a fair and impartial trial, and he shows gross prejudices against him by the jury who have convicted him on testimony wholly insufficient; but he is answered that the Constitution protects him from being put in jeopardy a second time for the same offense, and that a new trial would violate this provision. In other words, the Constitution guarantees to him the right of being hung, to protect him from the danger of a second trial. Whatever may be said theoretically of this constitutional protection, practically the subject of it can have no very strong reason to appreciate it."

It will be observed that in each of the cases above cited, the opinion of Justice Story was urged as an authority against the prisoner's right to set aside the verdict, as well as against his right to a new trial. And, indeed, it is difficult to perceive how, in a case of a conviction of a capital offense, it could ever be applied to the prisoner's advantage,

because the whole theory of the argument is, that where the trial has been regularly had before a court of competent jurisdiction, upon a good indictment, and a verdict has been regularly rendered by a competent jury, the verdict is final, notwithstanding the court may have committed errors in the progress of the trial, and notwithstanding, also, that the evidence may have been insufficient to justify it.

We do not deem it necessary to refer, in detail, to the other cases cited by counsel, because the facts upon which the decisions rest do not exist in the case under consideration; and, in our opinion, they required an entirely different application of the constitutional provision involved. With the exception of *The People* v. *Webb,* the cases cited relate to causes in which the defendant had been put upon his trial, and, without his consent, the jury were discharged before they had rendered a verdict. For the purposes of this case it may be conceded that, as a general rule, when the jury has been sworn, and the prisoner has been put upon his trial, and the jury are discharged without his consent, before rendering a verdict, that he cannot be tried again; though there are exceptions to the rule based upon urgent necessity. In the case of *The People* v. *Webb,* the defendant was tried and acquitted by the jury, and also discharged by the judgment of the court. The People having appealed, the court, following the almost universal current of authority both in England and in the United States, decided that the defendant having been once acquitted by the jury, he could not be held to answer again for the same offense, no matter by what mistakes or errors of the court, jury or prosecution the acquittal was obtained; and the court also decided that the statute giving the right of appeal to the people, in criminal cases, must be confined to such cases in which errors in the proceedings may occur before legal jeopardy has attached to the accused. We see no analogy between the cases cited by counsel and the one at bar. No case is cited where the verdict of guilty having been set aside, at the instance of the defendant, it has been held to bar another trial.

Whatever may have been the opinion of some of the earlier judges of both the United States and some of the State courts, in respect to the correct interpretation and effect of the constitutional provision, which declares that "no person shall be subject to be twice put in jeopardy for the same offense," we think the rule is now well settled that, when the verdict is so defective that no judgment can be entered upon it, the defendant, who might have had it perfected when rendered, is considered as consenting to it, and as waiving any objections to being put to answer before another jury. Bishop, in treating of the doctrine of consent under this constitutional provision, states, as the result of the decisions on the subject, as follows: "Thus, if, during the trial, the jury is discharged with the prisoner's concurrence, his privilege to object is waived, and he may be tried anew. And when a verdict is so incomplete that no judgment can be entered upon it, the law infers the consent of both parties to it; because either party might have had it perfected when rendered; and, therefore, the prisoner may be put to answer before another jury. * * * And finally, whenever a verdict, whether valid in form or not, has been rendered on an indictment either good or bad, and the defendant moves in arrest of judgment, or applies to the court to vacate a judgment already entered, for any cause, as for many causes he may, he will be presumed to waive any objection to being put a second time in jeopardy; and so he may ordinarily be tried anew." (1 Bish. Crim. Law, 3d ed., Sec. 844; *State* v. *Sutton,* 4 Gill. 494; *Sargent* v. *State,* 11 Ohio, 472; *Wilson* v. *The State,* 20 Ohio, 26; *Monroe* v. *State,* 5 Ga. 85; *State* v. *Hughs,* 2 Ala. 102; *Cabia* v. *State,* 16 Ala. 781; *Gerard* v. *People,* 3 Scam. 363; *People* v. *Olcott,* 2 Johns. Cas. 301; *People* v. *Casborus,* 13 Johns. 350; *Commonwealth* v. *Green,* 17 Mass. 515; *People* v. *Stone,* 5 Wend. 39; *Allen* v. *State,* 24 Ark. 333; *Gibson* v. *Commonwealth,* 2 Va. Cas. 111; *Commonwealth* v. *Smith,* Id. 327; *People* v. *Olwell,* 28 Cal. 456; *United States* v. *Keen,* 1 McLean, 429.)

It was, however, suggested at the argument, that even if

no constitutional inhibition exists, the court has no authority to order the defendant to be tried again, because he did not apply for a new trial in the court below, but applied to be discharged from custody. The statute provides "that the appellate court may reverse, affirm or modify the judgment appealed from, and may, if necessary or proper, order a new trial." (1 Compiled Laws, 529, Sec. 488.) It is thus apparent that whether a new trial is necessary or proper is a question for the court, and not for the defendant, to determine. In the language of Currey, J., in the case of *The People* v. *Olwell, supra:* "If it be necessary or proper in the judgment of the court to make such order, its power is nowise abridged because the defendant may fail or intentionally refuse to ask in terms for a new trial upon the reversal of the judgment. The court is to determine the question of necessity or propriety of ordering a new trial, and may exercise the power of making the order in such cases unless inhibited by the provision of the Constitution to which we have referred. The taking of an appeal from the judgment of conviction was a matter of the defendant's option. He had his choice to let the judgment stand and abide the consequences of it, or to move for its reversal in order to relieve himself from the jeopardy in which he was by reason of it. The appeal was taken on his behalf and for his benefit. The verdict and judgment by which his life was in peril being annulled at his request, the same are as though they never had been, and he is not in a position to set up the former trial and conviction in bar of another trial. The reversal of the judgment at the defendant's instance on appeal, takes from him the right of setting up the former trial and conviction in bar of another trial, as effectually as if he had secured the same end by a motion for a new trial."

The judgment is reversed, the verdict set aside, and a new trial ordered.