## THE PEOPLE v. DOLAN.

An indictment charging "murder in the first degree," is good, as that offence includes murder in the second degree, and manslaughter.

The substantial facts necessary to constitute the crime charged, must appear in the indictment with sufficient certainty to enable the Court to pronounce a proper judgment, and the party to defend against the charge; but they need not be stated with the particularity required at common law.

It is sufficient if a man of ordinary intelligence can understand from the indictment, that, under such circumstances as showed a felonious intent, a mortal wound was inflicted by the defendant upon the deceased, of which wound he died within a year and a day from its infliction.

The absence of the word "deliberate" in such an indictment, where the crime is alleged to have been committed "with malice aforethought," is immaterial, the expressions being synonymous.

It is sufficient if the indictment charge the offence in the language of the statute defining it.

APPEAL from the District Court of the Fifteenth Judicial District, County of Butte.

The defendant was indicted, tried, and convicted of the crime of murder. The material averments in the indictment are as follows:

"The said John Dolan, on the twenty-fifth day of October, A. D. one thousand eight hundred and fifty-seven, at a place near Evansville, and some two miles therefrom, in the county of Butte aforesaid, and before the finding of this indictment, did willfully, unlawfully, feloniously, and with malice aforethought, shoot, bruise, and wound, one Edward Sharkey, upon the body of the said Edward Sharkey, with a pistol, then and there in the

hands of the said John Dolan, from which said shooting, bruising, and wounding of the said Edward Sharkey by the said John Dolan, the said Edward Sharkey did die, to wit: on the said twenty-fifth day of October, A. D. 1857, and by thus shooting, bruising, and wounding with pistol, as aforesaid, the said John Dolan did then and there, willfully, unlawfully, feloniously, and with malice aforethought, kill, and murder, the said Edward Sharkey, against the form of the statute," etc.

The defendant demurred to this indictment. The grounds of demurrer were the same as those taken on appeal, and set forth in the opinion of the Court, with the additional ground that "the indictment does not state that said deceased died in the county." After conviction, defendant moved for a new trial and in arrest of judgment. Both motions were denied, and defendant appealed to this Court.

*L. C. Granger* for Appellant.

The defendant submits, that this indictment is "direct and certain" in none of the requisites held by this Court essential, in the case of The People v. Jacinto Aro, 6 Cal. R., 207, where it is distinctly avowed, that "there is little or no difference between the requirements of an indictment at common law and under our statute, except in the manner of stating the necessary matter." By this decision the Court below ought to have been governed in determining the sufficiency of the indictment—and that ruling of the Supreme Court had been made nearly two years since. And the defendant brings his cause before this ultimate tribunal, and urges:

1. That the indictment wrongly attempts to fix or designate the degree of murder.

This part of an indictment is regulated by the statute, which declares that the jury before whom any person indicted for murder shall be tried, shall by their verdict designate the degree. Crimes and Pun., § 21. Defendant claims from this statute, that the grand jury can find an indictment only for murder; and the nice distinctions which are necessary to be drawn in determining the degrees of murder, are not proper for them to undertake; it is not presumed that they are furnished with all the evidence requisite for that purpose; it would not be safe for them to designate the degree; for the defendant's cause, as it is difficult to discern the difference between the degrees of murder, would be prejudiced by such a course; for all are aware of the influence of the expression of an opinion as to the degree of the offence by a tribunal so imposing, upon the minds of the trial jury.

It is humbly urged, that in this matter the grand jury assumed powers expressly and exclusively entrusted to the trial jury. The statute declares, that on an indictment for murder, the trial

jury shall designate the degree.   The powers and duties of each
body in reference to the crime of murder are by law fixed, beyond
which it is fatal for either to go.

2. The indictment is insufficient in its statement of the acts
and circumstances necessary to constitute the offence charged.

The indictment in this case, in more respects than in designa-
ting the degree of murder, it is most confidently insisted, is an
anomaly in the history of criminal prosecutions in this State.
It is particular where it should be general, and *vice versa*.   In
laying the venue, where the county is only required, it aims to
give the exact spot of the occurrence—" at a place near Evans-
ville, and some two miles therefrom, in the county of Butte,
aforesaid."   But where the statute requires direct and positive
averments of the acts and particular circumstances that consti-
tute the offence, it happily avoids all detail as tedious and prolix,
and charges, vaguely, generally, and by implication, difficult of
comprehension.   For instance, it charges that defendant " did
shoot, bruise, and wound, upon the body of the said Edward
Sharkey, with a pistol;" and from this draws an inference, (it
does not directly charge anything of the kind,) that Edward
Sharkey died, as a necessary consequence thereof.   This is all
the act that John Dolan did, to wit: He " did shoot, bruise, and
wound, upon the body of the said Edward Sharkey;" and yet
it concludes by a kind of logical deduction of the genus *non se-
quitur*, as follows, to wit: "from which said shooting, bruising,
and wounding of the said Edward Sharkey, by the said John Do-
lan, the said Edward Sharkey did die, to wit: on the twenty-
fifth day of October, A. D. 1857; and by thus shooting, bruising,
and wounding with pistol, as aforesaid, the said John Dolan did
—— kill and murder," etc.

The statute requires the indictment to state how John Dolan
did commit the offence—the acts which he did in order to com-
mit murder in the first degree.   This is what we infer from our
statute, when it requires a " statement of the acts constituting
the offence;" for " murder is a conclusion of law from certain
facts, and it is necessary that the facts should be stated in the in-
dictment with convenient certainty.   The People v. Aro, 6 Cal.
Rep., 207.   Very well, how then is it charged that John Dolan
committed the offence ?   Why, he " did shoot, bruise, and wound,
upon the body of the said Edward Sharkey, with a pistol."
An uneducated man, of common sense, who never entered a
Court of Law, in describing how one committed murder upon
another, and the " acts" and " particular circumstances" by
which it was effected, would never have given so uncertain an
account of it.   Such a man would have made the acts produce
the death of the deceased beyond inference or absurdity; he
would have described the instrument of death, loaded for the
purpose, the vital parts which were penetrated by the leaden

bullet—the mortal wound which was thereby produced. Nothing would be left to uncertainty, doubt, or illogical implication. And all this does our statute require, in simple, brief, but positive language. If this indictment had charged that defendant did shoot one Edward Sharkey, to the body of said Edward Sharkey, the conclusion that this produced his death, or effected the murder, would have been just as logical and as reasonable as that the act alleged did produce it.

If the defendant had shot, bruised, and wounded the hand of Edward Sharkey, it would have been done upon his body. Would common sense infer that death necessarily resulted therefrom? Or, suppose the ball struck the bone between the knee and ankle, and flattened itself upon the bone. Would this, in one case out of a thousand, produce death? But still, it is upon the body. Is, then, the simple averment that defendant "did shoot, bruise, and wound, upon the body of Edward Sharkey with a pistol," a sufficient "statement of the acts constituting the offence" charged? Do such acts constitute the offence of murder; or does it at all show how he "committed" the crime? Had the indictment but stated that defendant, with a pistol thereunto charged with powder, cap, and leaden bullet, did shoot and wound the deceased in the fore part of his body, penetrating through the body of deceased in the part aforesaid, inflicting there a mortal wound, of which the deceased did die, etc., the description or statement of the acts would be as brief as that adopted, and would have made out a complete case of murder, so far as the naked acts could constitute it. The defendant, therefore, submits that this Honorable Court must ignore its frequent and uniform decisions, in the case of the People v. Aro, 6 Cal. Rep., 207; in that of The People v. Lloyd, 9 Cal. Rep.; in that of the People v. Wallace, 9 Cal. Rep.; and in that of The People v. Cox, 9 Cal. Rep., before it can admit the sufficiency of this indictment in its statement of the acts and circumstances constituting the offence charged. Under those decisions, with the utmost confidence, we claim, "that the substance of the indictment must still be the same as at common law." Because, in the absence of any statutory provision to the contrary, the common law of England is, in this State, established as the rule of decision; and by express enactment is made so in all cases where it is not "repugnant to the laws" of our statute.

3. The indictment does not contain a sufficient charge to predicate thereon a verdict of murder of the first degree.

As at common law, there are no degrees of murder, but all murder is treated and punished alike; the wretch who carries off his victim by the secret agency of poison; and he whose passions have been inflamed by foul aspersions of his character, smarting under the indignity for days, has at last concluded to let the outrage pass unavenged, but upon an unexpected meet-

ing, the presence of his enemy rouses with overwhelming energy the sense of his wrong, and without any renewed provocation, he strikes down and slays his enemy; both are treated alike at common law. But our statute having declared that there are degrees in the crime of murder, having drawn the distinctions between them, and having set forth the essential ingredients of each degree, the defendant insists that the technical terms commonly used in describing the crime of murder at common law, are not sufficient under our statute to make up the offence of murder of the first degree. It is evident that the statute of California in relation to this crime, is different from that of any other State; and the distinctions drawn by it between the two degrees, are far from being what has been generally considered. While it is to be regretted that the clear and just distinctions, which have obtained in some of the other States, have not been adopted by our statute; still, we have to take the law as it is, and not attempt to define the degrees differently from what our Legislature has established.

The difference, according to our statute, between the two degrees of murder, cannot possibly be mistaken; and it is regulated wholly by the quality of the malice attaching to each degree. The malice which belongs to the first degree is express; that which belongs to the second degree is implied. Express malice is defined by statute to be a "deliberate intention" to kill; and it is "manifested by external circumstances capable of proof." By the twenty-first section, all kinds of "deliberate" killing, with "malice aforethought," are classified with the first degree of murder. Deliberation, therefore, as well as premeditation, enters into "express" malice, and necessarily excludes "express" malice from the second degree, confining it entirely to the first degree. Express malice can always be proven where it exists, for it is manifested by external circumstances capable of proof." It is always clearly exhibited by the means adopted to effect the killing; or it may be proven by previous threats and menaces. The malice which belongs to the second degree, is known only by implication; it is "when no considerable provocation appears, or when all the circumstances of the killing show an abandoned and malignant heart." The mere fact of the unlawful killing being proved, therefore, the law presumes "implied malice," and at once fixes the grade of the murder at the second degree. It is "aforethought," although, perhaps, but momentary; because it is presumed the party killing intended to do what he did. But it must be always proven that the act was deliberated upon in cool blood; that the intention to kill had become the settled purpose and fixed determination of the party killing, previous to the commission of the act—before the grade of the crime can be raised to the first and highest magnitude; for malice may be premeditated without being deliberate, for the reason that kill-

ing may be done upon a slight and inconsiderable provocation soon after it occurs, and before the mind did coolly ponder, reason, and deliberate upon it; and the killing was premeditated, because the party killing did what he intended to do.   In this supposed case, the act itself shows not deliberation, but that general malice which riots in an "abandoned and malignant heart."

Passion is blind—"it is hasty, rash, following the first impulse of the moment; malice is cool, circumspect, slow, brooding, meditating, planning."   "Malice does not mean mere passion; for the very existence of passion is often evidence that there was no malice."   Beauchamp v. The State, 6 Blackford's R., 311. And it is claimed that the distinctions which are recognized in these laws of mind, have been incorporated in our statute, because they do exist, and influence human actions.

When the statute declares that there are two degrees of murder; that "all murder which shall be perpetrated by means of poison, or lying in wait, torture, or by any other kind of willful, deliberate and premeditated killing, or which shall be committed in the perpetration or attempt to perpetrate any arson, rape, robbery, or burglary, shall be deemed murder of the first degree; and all other kinds of murder shall be deemed murder of the second degree,"—it means that the unlawful killing, with "malice aforethought," unless it was further done by poison, lying in wait, torture, or other kind of deliberate killing, or in the perpetration or attempt to perpetrate any arson, rape, robbery, or burglary, is murder only of the second degree.   Killing, by means of poison, lying in wait, or torture, presumes deliberate "malice aforethought."   Killing, in the perpetration or attempt to perpetrate any arson, rape, robbery, or burglary, is expressly declared to be murder of the first degree, whether it was done with or without deliberation and premeditation.   Therefore, it is by us insisted that before any citizen can be convicted of murder of the first degree, it must be proven that the killing done by him was deliberate, as well as premeditated, or in the perpetration or attempt to perpetrate either arson, rape, robbery, or burglary. If it must be proven, it must be charged in the indictment.   See 1 Chitty Crim. Law, 172.   It is not enough to charge the killing to be willful, unlawful, felonious, and of malice aforethought,— for all this simply makes out a case of murder of the second degree.

But we are told that the trial jury, after hearing the evidence, must designate the degree of murder.   And can the jury designate a grade of offence higher than that which is laid in the indictment?   Again, it is said that the technical terms employed in this indictment are sufficient, at common law, to support a conviction for murder.   Well, there were no degrees of murder at common law, with each degree distinctly marked, and differing the one from the other.   Besides, the meaning of terms is

changed frequently in the lapse of years; and there can be no better evidence that the term "aforethought" does not now, necessarily, imply deliberation, than the words employed by our statute in defining the first degree of murder. It is a rule of law, well established, that in charging the commission of a crime, the exact words of the statute descriptive of the offence must be adopted in the indictment. 1 Chitty Crim. Law, 283, and Notes, where the principle is carried to the fullest extent. "Indictments framed upon statutes must conform strictly to the words of the enactment." State v. Brown, 4 Porter, 410; Hamilton v. Commonwealth, 3 Penn., 142; State v. Casados, 1 Nott & M., 91; Updegraff v. Commonwealth, 6 Serg. and R., 5; State v. Raines, 3 McCord, 533; State v. Petty; Harper, 59; U. States v. Lancaster, 2 McClean, 431. "No rule is better settled that that which requires, as sufficient in an indictment, the averment of an offence in the language of the statute creating it." State v. Bougbee, 3 Blackford, 308, etc. "Where a statute employs a general term, and afterwards more special terms, in defining the offence, an indictment using the general term only, is· bad, though it would, in its meaning, comprehend the special term. State v. Plunket, 1 Stewart, (Ala.) 11; Rex v. Cooke, Leach C. C. L., 123. It is a rule of common sense, also, that the less does not contain the greater offence, in that class of crimes having reference to injuries done to the person. The defendant asked the District Court to instruct the jury that they could not find him guilty of murder of the first degree under the indictment, which was refused. He brought the error forward in his motion in arrest of judgment, and was still refused. And now, having seen no reason to change his views, he comes to this Honorable Court, and declares that he has been found guilty of a higher degree of crime than was charged against him by a grand jury of his county; that they mistook the degree of his offence, calling that first which was but second, and imposing their mistake upon the Court and jury by whom defendant was tried.

Again: the second degree of murder being declared by statute to be an unlawful killing, "with malice aforethought," the first degree must contain something more. And what is that further ingredient? So far as we have been able to ascertain, from the limited libraries within our reach, in all the States where there are grades of murder, the first degree is defined to be of deliberate as well as premeditated malice. The common agreement of mankind, therefore, has attached a significant importance to the term "deliberate," in defining the malice of murder. Webster's Dictionary defines it thus: "Deliberate, a. 1. Weighing facts and arguments with a view to a choice or decision; carefully considering the probable consequences of a step; circumspect; slow in determining. 2. Formed with deliberation; well advised or considered; not sudden or rash; slow." The term

necessarily implies time for cool examination, and a fixed purpose to execute what is designed ; while premeditation does not go so far.   To think upon, or meditate an act, does not necessarily imply a calm and settled resolve to execute it; it suggests only such an intention as may, or may not be carried out, owing to future circumstances.

*Attorney-General* for Respondent.

TERRY, C. J., delivered the opinion of the Court—FIELD J., concurring.

Defendant was tried and convicted on an indictment charging him with the crime of murder in the first degree.   The points taken by appellant are :

1. "The indictment wrongly attempts to fix or designate the degree of murder."

2. "It is insufficient in its statement of the acts and circumstances necessary to constitute the offence therein charged."

3. "It does not contain a sufficient charge to predicate thereon a verdict of murder in the first degree."

The first objection is frivolous.   It is certainly not necessary that the grand jury should designate the degree of murder, though there is no impropriety in their doing so.   Nor is it perceived in what manner the defendant is prejudiced by this act. Under an indictment charging murder, the trial jury are required to designate the degree of guilt, and may find any offence included in the charge, and they have equally this privilege if the indictment charge murder in the first degree, as the offence of murder in the second degree and manslaughter are necessarily included in it.

The second objection is not well taken.   We have held that the substantial facts necessary to constitute the crime charged, must appear in the indictment with sufficient certainty to enable the Court to pronounce a proper judgment, and the party to defend against the charge.

But it is not necessary that they should be stated with the particularity which was required at common law.

It is sufficient if a man of ordinary intelligence can understand from the indictment, that, under such circumstances as show a felonious intent, a mortal wound was inflicted by the defendant upon the deceased, of which wound he died within a year and a day from its infliction.

The third objection is founded on the absence of the word " deliberate," which the applicant contends is necessary to constitute the crime of murder in the first degree.

The indictment charges the act to have been done with malice aforethought.   Aforethought, as defined by Webster, means premeditated; premeditate and deliberate are synonymous.   The

definition given of murder in the statute is, " the unlawful killing of a human being with malice aforethought, expressed or implied." This definition includes both degrees of murder, and it is sufficient if the indictment charge the offence in the language of the statute defining it. (People v. Parsons, 6 Cal., 487.)

Judgment affirmed, and the Court below directed to appoint a day for the execution of its sentence.