## SHEPHERD v. THE STATE.

CRIMINAL LAW.—*Indictment for Murder.*—*Certainty.*—*Motion in Arrest.*—The defendant was convicted of murder. The indictment upon which he was tried alleges that the defendant, "on," etc., "at," etc., "did then· and there feloniously, purposely and with premeditated malice, kill and murder" the deceased, "by then and there and thereby feloniously, purposely and with premeditated malice, *firing* a large sized Colt's revolving pistol, loaded with gunpowder and leaden balls, which he," the defendant, "then and there had and held· in his hands, contrary," etc.

*Held*, on motion in arrest of judgment, that the indictment is bad for ·want of certainty in charging the mode and manner in which the deceased came to his death.

From the Sullivan Circuit Court.

*S. Coulson*, ——— *Buff* and ——— *Hays*, for appellant.

*C. A. Buskirk*, Attorney General, for the State.

PERKINS, J.—The grand jury of Sullivan county, Indiana, returned into court the following indictment, viz.:

"State of Indiana, Sullivan county, ss. Sullivan Circuit Court, June Term, 1875.

"State of Indiana *v.* Thomas Shepherd. Indictment for murder.

"The grand jury of Sullivan county, in the state of Indiana, good and lawful men, duly and legally empanelled, charged and sworn to inquire into felonies and certain misdemeanors, in and for the body of said county of Sullivan, in the name and by the authority of the state of Indiana, on their oaths present, that one Thomas Shepherd, late of said county, on the 10th day of June, A. D. 1875, at said county and state aforesaid, did then and there

feloniously, purposely and with premeditated malice, unlawfully kill and murder Mason Engle, by then and there and thereby, feloniously, purposely and with premeditated malice, firing a large sized Colt's revolving pistol, loaded with gunpowder and leaden balls, which he, the said Thomas Shepherd, then and there had and held in his hands, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State of Indiana."    J. L., "Prosecuting Attorney."

The defendant was convicted upon this indictment. A motion in arrest of judgment was interposed, on the ground of insufficiency of the indictment, but the motion was overruled, and the defendant sentenced to the state prison for life.

The first error assigned is the overruling of the motion in arrest of judgment. In this state, crimes are statutory, and so are the rules, in the main, at least, of pleading and practice for their prosecution.

In the case at bar, the question is made upon the sufficiency of the indictment, and, hence, we must turn to the statute to ascertain the requirements of a sufficient indictment, by which we must test that on which the defendant was convicted in this case.

The statute does not authorize a prosecution for murder on an indictment charging the offence by name, simply. An indictment charging that A. B., on, etc., with malice, etc., at, etc., killed and murdered C. D., would not be a valid indictment, under our statute regulating criminal pleading and practice, because such an indictment would not contain the facts constituting the crime. Probably the English statute goes further than ours. *Dukes* v. *The State*, 11 Ind. 557.

Our statute enacts that, " The indictment    *    *    * *must* contain    *    *    * a statement of the facts constituting the offense, in plain and concise language, without repetition." It " must be direct and certain, as it re-

gards the party, and the offence charged." 2 R. S. 1876, p. 383, secs. 54, 55.

A very material part of the facts constituting the offence consists of those in relation to the manner in which, and the means by which, the crime was perpetrated. The statute, by fair interpretation, requires these to be stated with reasonable particularity. This view is confirmed by the fact that the legislature that enacted the act constituting, in part, a code of criminal pleading and practice, adopted a set of forms to be used under said code, which forms, not being enacted under the proper title, did not become legally operative and binding; but which did set out the facts as to the mode and manner of committing the crime,—the offence charged.

We give the skeleton form of an indictment for murder, as an illustration. 2 R. S. 1876, p. 368. The body of it is as follows:

"The grand jury in the county of —— charge that A. B., on ——, at——, purposely and with premeditated malice unlawfully killed and murdered C. D., by shooting him with a pistol, (or by administering to him poison, or by stabbing him with a knife,   *   *   *   as the case may be.)"

This skeleton form shows conclusively that the legislature, by their enactment that an indictment should contain the facts constituting the offence charged, intended that it should contain those showing the mode and manner of its perpetration. In *Dillon* v. *The State*, 9 Ind. 408, the legislative enactment on criminal pleading and practice was examined by STUART, J., one of the ablest jurists that ever sat upon the Supreme Bench of Indiana, and the conclusion he arrived at, and in which all the members of the court concurred, was, that "the statute" of 1852 "requires" in an indictment "all the material allegations of a good indictment at common law." See, on this point, *The State* v. *Locke*, 35 Ind. 419; *Quinn* v. *The State*, 35 Ind. 485.

The question remains, does the indictment in the case at bar contain a plain, direct and certain statement of the facts constituting the crime of which defendant was convicted? If it does not, it is bad by the statute. All the indictment contains on the subject is this: " That one Thomas Shepherd, on," etc., " did then and there, * * * with premeditated malice, unlawfully kill and murder Mason Engle, by then and there and thereby firing a large sized Colt's revolving pistol, loaded with gunpowder and leaden balls, which he, the said Thomas Shepherd, then and there had and held in his hands."

We pause, at this point, and ask what were the facts as to the mode and manner of Mason Engle's death,—what caused it? Was he wounded by the balls from the pistol, from which wounds he died? The indictment does not so charge. It does not aver that the pistol was even shot at him. It may have been fired into the air, or at a mob, or at a flock of birds, so far as we are informed by the indictment.

It may have been that the deceased was a man in feeble health, and that the sudden and unexpected discharge of a pistol near him caused his death, by the shock or fright it occasioned. If so, it might be important that the indictment should state how long he survived after the discharge of the pistol, that the connection between the discharge and the death might appear.

But we need not pursue the subject. We think it very clear that the indictment in this case does not contain a plain, direct and certain statement of the facts constituting the crime. From such a statement, the connection between the facts alleged as the cause of death and the death itself should appear. Such is not the case in this indictment. We think the indictment bad.

It is not a pleasant thing to hold an indictment invalid, on which a conviction has been had, but it is nevertheless a duty to so hold when the indictment is clearly bad. Here, the indictment is bad for nonconformity to the re-

quirements of the statute.   And if this court, for the sake
of sustaining the conviction in this case, construes away
some of the requirements of the statute, the true test by
which to determine the validity of an indictment is de-
stroyed, and in each succeeding case we shall be expected
to depart further and further from the statute, till the only
rule left will be the mere discretion of the court in each
particular case.

Reversed.