(April 30, 1917.)

# STATE, Respondent, v. ALFRED LUNDHIGH, Appellant.

[164 Pac. 690.]

CRIMINAL LAW—INFORMATION CHARGING MURDER—SUFFICIENCY OF—DYING DECLARATIONS—INSTRUCTIONS.

1. An information, the charging part of which is in the following language, to wit, that the defendant "did then and there wilfully, unlawfully, feloniously, and with malice aforethought, kill and murder one Evangelos Pappas, a human being," is sufficient to charge the crime of murder.

2. *Held,* that the dying declaration of the deceased in this case was properly admitted in evidence.

3. Under sec. 7946, Rev. Codes, written charges presented and requested by either the state or defendant are deemed excepted to, and this court may examine such charges whether assigned as error in the brief of appellant or not.

4. An instruction of the court given at the request of the state contained the following: "The jury are not to accept the evidence of the accused blindly or any further than it is corroborated by other evidence, but may consider whether it is true and given in good faith, or merely to prevent a conviction. And in considering the testimony of defendant Lundhigh, you have a right to take into account any interest he may have in the result of your verdict, as bearing upon the question of his credibility as a witness in his own behalf." *Held,* that the giving of such an instruction is error.

5. An instruction to the jury based upon sec. 7866, Rev. Codes, to the effect that if the state has proved beyond a reasonable doubt that the defendant shot and killed the deceased, and the plea of self-defense is interposed by defendant, it is incumbent upon him to establish and prove such defense by a preponderance of the evidence, is erroneous.

6. Upon a trial for murder, where the state has proved beyond a reasonable doubt the commission of a homicide by the defendant, if the commission of the homicide is admitted by the defendant, the burden of proving the circumstances in mitigation of, or that justify or excuse it, devolves upon him, unless the proof in the case tends to show that the crime only amounted to manslaughter or that the defendant was justifiable or excusable; but he is not required to establish such circumstances by a preponderance of the evidence, but only to such extent that the jury, after considering the whole evidence in the case, have a reasonable doubt as to his guilt.

[As to form and sufficiency of indictment for murder, see note in 3 Am. St. 279.]

APPEAL from the District Court of the Sixth Judicial District, for Bingham County. Hon. F. J. Cowen, Judge.

Defendant was convicted of murder in the second degree. Appeal from the judgment and order denying motion for new trial. *Reversed.*

Thomas & Anderson and Hansbrough & Gagon, for Appellant.

Before a legal conviction can be had, the state must have established the accused person's guilt of the crime charged by legal evidence and beyond reasonable doubt. (*State v. Seymour,* 7 Ida. 257, 61 Pac. 1033, 7 Ida. 548, 63 Pac. 1036; *State v. Marquardsen,* 7 Ida. 352, 62 Pac. 1034.)

Dying declarations are admissible only when made under the fear of impending death and after one had given up all hope of recovery. (12 Cyc. 432; 21 Cyc. 973; 4 Elliott on Evidence, sec. 3033; *State v. Gianfala,* 113 La. 463, 37 So. 30.)

This is indispensable to that sanction which the law exacts, and if it shall appear in any mode that there was a hope of recovery, however faint it may have been, still lingering in his breast, that sanction is not afforded, and his statement cannot be received. (*People v. Sanches,* 24 Cal. 17, 24; *People v. Hodgdon,* 55 Cal. 72, 36 Am. Rep. 30; *People v. Taylor,* 59 Cal. 640; *People v. Ramirez,* 73 Cal. 404, 15 Pac. 33; *People v. Fuhrig,* 127 Cal. 414, 59 Pac. 693.)

T. A. Walters, Atty. Genl., J. H. Peterson, Former Atty. Genl., Herbert Wing, Asst., C. M. Booth and R. W. Adair, for Respondent.

The amount or character of evidence necessary to create a reasonable doubt is solely for the jury to determine, and where the evidence as a whole is sufficient, the verdict will not be disturbed. (*State v. Hopkins,* 26 Ida. 741, 145 Pac. 1095; *State v. Grant,* 26 Ida. 189, 140 Pac. 959; *State v. Webb,* 6 Ida. 428, 55 Pac. 892.)

Where the evidence is conflicting on a material issue, a new trial will not be granted. (*State v. Downing*, 23 Ida. 540, 130 Pac. 461; *State v. Collett & Ireland*, 9 Ida. 609, 75 Pac. 271; *State v. Rathbone*, 8 Ida. 161, 67 Pac. 186.)

In prosecutions for homicide, the declaration of the deceased voluntarily made while sane when in *articulo mortis*, and under the solemn conviction of approaching dissolution, concerning facts and circumstances constituting the *res gestae* of his destruction, are always admissible in evidence, provided the deceased would be a competent witness, if living. (21 Cyc. 974; *State v. Wilmbusse*, 8 Ida. 608, 70 Pac. 849; 10 Am. & Eng. Enc. Law, 2d. ed., 389; 4 Cyc., Ev., 930.)

For the court to give undue prominence in particular matters in instructions is erroneous. (12 Cyc. 649.)

All errors not prejudicial to the defendant must be disregarded. (*Territory of Neilson*, 2 Ida. 614, 23 Pac. 537; *State v. Hurst*, 4 Ida. 345, 39 Pac. 554.)

RICE, J.—In this case defendant was convicted of murder in the second degree. The charging part of the information reads as follows: "The said Alfred Lundhigh, on or about the 11th day of June, 1915, at the county of Bingham and state of Idaho, and prior to the filing of this information, did then and there wilfully, unlawfully, feloniously, and with malice aforethought, kill and murder one Evangelos Pappas, a human being." Demurrer was filed to this information, on the ground that it does not substantially conform to the requirements of sections 7677, 7678 and 7679, Rev. Codes of Idaho, and further, for the reason that it does not state facts sufficient to constitute a public offense.

This court has stated repeatedly that an indictment or information charging an offense in the language of the statute defining it is sufficient. No distinction appears to have been made in this respect between indictments or information for murder and those charging other crimes. (*People v. Butler*, 1 Ida. 231; *People v. Ah Choy*, 1 Ida. 317; *State*

*v. Ellington,* 4 Ida. 529, 43 Pac. 60; *State v. Keller,* 8 Ida. 699, 70 Pac. 105.)

It is essential that an indictment or information should charge all the elements necessary to constitute the offense. Murder is defined to be the unlawful killing of a human being with malice aforethought. (Rev. Codes, sec. 6560.) The elements constituting the offense of murder are the killing of a human being, the unlawfulness of the killing and that it was accomplished with malice aforethought. I think these are the ultimate facts to be pleaded, and that the means by which and the manner in which the killing was accomplished are evidentiary facts which need not be pleaded. The information filed in this case sufficiently pleads the ultimate facts and satisfies the requirements of sections 7677, 7678, 7679 and 7686 of the Rev. Codes. (*Strickland v. State,* 19 Tex. App. 518; *People v. Cronin,* 34 Cal. 191.)

The criminal practice act of the territory of Idaho was enacted in 1864 and was taken from the statutes of California. Prior to the adoption of the California criminal practice act by the legislature of the territory of Idaho, the California courts had held as follows: "There is little or no difference between the requirements of an indictment under the common law and under our statute, except in the manner of stating the matter necessary to be contained." (*People v. Aro,* 6 Cal. 207, 65 Am. Dec. 503.) In the matter of indictments charging murder, the supreme court of California changed its position shortly after the adoption of the criminal practice act by the legislature of this territory, as shown by the cases of *People v. King,* 27 Cal. 507, 87 Am. Dec. 95, *People v. Cronin,* 34 Cal. 191, *People v. Hyndman,* 99 Cal. 1, 33 Pac. 782, and *People v. Witt,* 170 Cal. 104, 148 Pac. 928. These cases and many other California cases have uniformly held an information drawn as was the information in this case to be sufficient and in proper form. The criminal practice act of Idaho thus adopted from California was re-enacted at the time of the enactment of the Revised Statutes in 1887, and again at the time of the adoption of the Revised Codes in 1909. Under the rule usually applicable,

the changed position of the California Supreme Court after the adoption of the statute by the legislature of this territory might be persuasive, but would not be binding upon this court. (*Cathcart v. Robinson*, 5 Pet. 264, 8 L. ed. 120.)

This court, however, prior to the re-enactment of 1887 had stated many times that an information charging a crime in the language of the statute defining that crime is sufficient. In the case of *State v. Sly*, 11 Ida. 110, 80 Pac. 1125, decided in May, 1905, this court said in effect that sec. 7675, Rev. Statutes, was evidently adopted for the purpose of abrogating the strictness of the common-law form of indictment. Again, in the same case, the court quotes with approval from the case of *People v. Murphy*, 39 Cal. 52, as follows: "The sufficiency of the indictment is not to be tested by the rules of common law, but by the requirements of the criminal practice act of this state. That act provides that the particular circumstances need not be stated, unless they are necessary to constitute the offense charged. Murder is the unlawful killing of a human being, with malice aforethought and certainly the means by which the killing is accomplished can never become material in ascertaining the offense charged. The requirement that it must appear that the party died within a year and a day is a rule of evidence merely. Unless the party died within that time the prosecution will not be permitted to show that he died of the injury received." And at page 115 of the Sly case this court said: "It is clear to our minds from the foregoing authorities that it has never been the intention of this court since its organization under the territorial government to the present time, to follow the doctrine laid down in the Aro and other early California cases in passing upon the sufficiency of an indictment or information."

Under such circumstances it is fair to presume that in the re-enactment of the Criminal Code in 1909 the legislature intended to adopt the construction which had been placed upon the statute by our own court. (*Gulf C. & S. F. Ry. v. F. W. & N. O. Ry.*, 68 Tex. 98, 2 S. W. 199, 3 S. W. 564; *State Commission in Lunacy v. Welch*, 154 Cal. 775, 99 Pac. 181; *Mitchell v. Simpson*, 25 L. R. Q. B. Div. 183.) This presump-

tion in the case of a re-enacted statute applies not only to the decisions of courts, but also to the actions of administrative officers taken under a statute. (*Copper Queen Con. Min. Co. v. Arizona,* 206 U. S. 474, 27 Sup. Ct. 695, 51 L. ed. 1143.)

It would seem that even though some of the observations in the Sly case were *obiter dicta,* they would be entitled to as much weight as the acts of administrative officers. I think, therefore, that this court is not bound to follow the California cases decided prior to the adoption of the criminal practice act of 1864.

In the case of *State v. Smith,* 25 Ida. 541, 138 Pac. 1107, this court held that an information charging manslaughter in the following language, viz., "that the defendant did unlawfully and feloniously kill one Clara Foy," is defective and insufficient to comply with the statute because of its failure to show the means by which death was accomplished. It is possible that in cases of involuntary manslaughter, it might sometimes be necessary that the particular circumstances be alleged in order to constitute the complete offense. I think, however, that the case of *State v. Smith, supra,* as applied to manslaughter generally and in so far as it might be considered as an authority with reference to indictments or informations for murder, should be overruled.

The appellant assigns as error the action of the trial court in permitting witnesses Ernest Pappas and Edith Roos to testify as to dying declarations on the part of the deceased. There can be no doubt but that these dying declarations were made in the presence of approaching dissolution, and both the statements of the deceased at the time and the surrounding conditions show conclusively that the deceased was cognizant of his condition. It appears that the witness Edith Roos was testifying from her knowledge of the statements of the deceased, and not relying upon the translation of his statements made to her by an interpreter. Her testimony, as to the dying declaration of the deceased is not inadmissible within the rule laid down in the case of *State v. Fong Loon,* 29 Ida. 248, 158 Pac. 233, L. R. A. 1916F, 1198. We are of

the opinion that the court did not err in permitting the testimony of these witnesses to be given.

Appellant in his brief failed to assign as error the giving of the instructions or any of them by the court. This court has held, in construing sec. 7946, Rev. Codes, that instructions in writing requested by the state, and given, or requested by the defendant and refused, are deemed excepted to, and the questions presented thereby need not be preserved in the bill of exceptions in order to be reviewed by the appellate court. Also that objections to instructions given by the court on its own motion must be preserved by bill of exceptions in order to be reviewed by this court. (*State v. O'Brien,* 13 Ida. 112, 88 Pac. 425; *State v. Suttles,* 13 Ida. 88, 88 Pac. 238; *State v. Peck,* 14 Ida. 712, 95 Pac. 515.) These provisions of the law, and the practices based thereon, do not appear to have been affected by the amendments to the criminal code which were enacted by the thirteenth session of the legislature, found under chapters 146, 147, 148, 149 and 150 of the 1915 Sess. Laws.

Under sec. 7946, Rev. Codes, as construed by the cases last cited, the instructions given at the request of the state are before the court for review, exceptions thereto having been preserved by law. This court will not assume the burden of searching the record for errors not assigned by the appellant, but in this case certain instructions given at the request of the state have come to our attention. Among them are instructions Nos. 62 and 65, which read as follows:

"Instruction No. 62. The jury are further instructed in the language of the statutes of this state that upon a trial for murder, the commission of the homicide by the defendant being proved, the burden of proving circumstances of mitigation, or that justify or excuse it, devolves upon him, unless the proof in the case tends to show what the crime committed only amounts to manslaughter or that the defendant was justifiable or excusable. So, in this case, if the state has proved beyond a reasonable doubt that the defendant, Lundhigh, shot and killed the deceased Pappas, the plea of self-defense interposed by the defendant must establish and

prove such defense by a preponderance of the evidence. So if you find from the evidence, beyond a reasonable doubt, that the defendant has failed by a preponderance of the evidence to establish and prove such defense, it will then be your duty to convict the defendant.''

''Instruction No. 65. The court instructs the jury that the law says that the, defendant is a competent witness and may testify in his own behalf, and the jury should not capriciously disregard such testimony. This does not mean that you should believe, but only that you should consider it and ascertain to the best of your judgment whether it is true, and if true you should act on it, and if you should not believe it you should reject such testimony, you being the sole judges of the truth of the evidence. The jury are not to accept the evidence of the accused blindly or any further than it is corroborated by other evidence, but may consider whether it is true and given in good faith, or merely to prevent a conviction. And in considering the testimony of the defendant Lundhigh, you have a right to take into account any interest he may have in the result of your verdict, as bearing upon the question of his credibility as a witness in his own behalf.''

In this case the killing was admitted by the defendant, and the only issue in the case was that arising from appellant's claim that he acted in self-defense. The only evidence of the immediate circumstances surrounding the killing is that contained in the dying declaration of the deceased and the testimony of appellant. Appellant's narrative. of those events is not impossible or incredible. The two instructions quoted therefore, bear directly upon the proof required on . the part of the appellant to justify the killing of the deceased on the ground of self-defense, and go to the very foundation of his defense. They are both erroneous. (*Coffin v. United States,* 156 U. S. 432, at pp. 459, 460, 15 Sup. Ct. 394, 39 L. ed. 481, at p. 494.)

By instruction No. 62 the, jurors are told that the defendant must establish and prove the plea of self-defense by a preponderance of the evidence, and that if they find from the evidence beyond a reasonable doubt that the defendant

has failed by a preponderance of the evidence to establish and prove such defense, it will be their duty to convict the defendant. This instruction does not state the law. Sec. 7866, Rev. Codes, is as follows: "Upon a trial for murder, the commission of the homicide by the defendant being proved, the burden of proving circumstances of mitigation, or that justify or excuse it, devolves upon him, unless the proof in the case tends to show that the crime committed only amounts to manslaughter, or that the defendant was justifiable or excusable." While the burden of proving the circumstances in mitigation or justification of the homicide rests with the defendant, he is not required to establish such circumstances by a preponderance of the evidence, but to establish the circumstances to such an extent that the jury, after considering the whole evidence in the case, have a reasonable doubt as to his guilt. (*State v. Rogers, ante,* p. 259, 163 Pac. 912; *People v. Bushton,* 80 Cal. 160, 22 Pac. 127, 549; *People v. Elliott,* 80 Cal. 296, 22 Pac. 207; *Davis v. United States,* 160 U. S. 469, 16 Sup. Ct. 353, 40 L. ed. 499.)

By instruction No. 65 the jurors are instructed not to consider the testimony of the accused any further than it is corroborated by other evidence. We do not understand that this is the law as applied to the testimony of a defendant in a criminal case. The defendant is entitled to the same consideration as a witness as the other witnesses in the case, and his credibility is to be tested by the same rules as are applicable to other witnesses. This latter instruction is also subject to the criticism which was applied to a similar instruction in the case of *State v. Rogers, ante,* p. 259, 163 Pac. 912, in that it singles out the defendant and directs the jury to apply tests as to his credibility as a witness differing from those applied to other witnesses in the case.

For these errors the judgment of the district court must be reversed. The cause is remanded, with directions to the trial court to grant the appellant a new trial.

BUDGE, C. J., Concurring in Part and Dissenting in Part. I concur in the opinion of Justice Rice that the information

is sufficient to charge the crime of murder. It will be conceded that under the common law the information would be fatally defective. (*People v. Aro,* 6 Cal. 207, 65 Am. Dec. 503; *People v. Lloyd,* 9 Cal. 54; *People v. Wallace,* 9 Cal. 30; *People v. Cox,* 9 Cal. 32; *People v. Steventon,* 9 Cal. 273; *People v. Coleman,* 10 Cal. 334; *People v. Dolan,* 9 Cal. 576; *People v. Judd,* 10 Cal. 313; *People v. Miller,* 12 Cal. 291.)

Beginning, however, with the case of *People v. King,* 27 Cal. 507, 87 Am. Dec. 95, the supreme court of California changed its former holding and held that:

"In an indictment for murder it is not necessary to aver the means by which the homicide was committed or the nature and extent of the wound, or the part of the body upon which it was inflicted."

And in the case of *People v. Cronin,* 34 Cal. 191, that court further held that an indictment need not aver the means or mode of death. (*People v. Hyndman,* 99 Cal. 1, 33 Pac. 782.)

In the case of *People v. Witt,* 170 Cal. 104, 148 Pac. 928, the supreme court of California, in discussing the sufficiency of an information, the charging part of which, with the exception of the name of the defendant and the date upon which the murder was committed, is the same as in the case at bar, says:

"Concededly, this describes the offense of murder in the language of our statute. . . . . Whatever may be the rule declared by some cases from other jurisdictions, it must be accepted as the settled law of this state that it is sufficient to charge the offense of murder in the language of the statute defining it, whatever the circumstances of the particular case."

The Witt case cites the case of *People v. Soto,* 63 Cal. 165, with approval, wherein it is held that an information in the language of the statute defining murder is sufficient to charge murder. The Idaho cases generally have used the same expression. (*Matter of McLeod,* 23 Ida. 257, 128 Pac. 1106, 43 L. R. A., N. S., 1813; *State v. O'Neil,* 24 Ida. 582, 135 Pac. 60; *State v. Brill,* 21 Ida. 269, 121 Pac. 79; *State v. Sly,* 11 Ida. 110, 80 Pac. 1125; *State v. Keller,* 8 Ida. 699, 70 Pac.

1051; *State v. Ellington,* 4 Ida. 529, 43 Pac. 60; *People v. Ah Choy,* 1 Ida. 317; *People v. Butler,* 1 Ida. 231.)

The early California cases, cited above, were decided by the supreme court of that state prior to the adoption of the California criminal practice act by the legislature of the territory of Idaho, in 1864, and ordinarily would be regarded as binding upon this court in the construction of the statute. However, in the matter of sufficiency of indictments for murder the California court changed its position shortly after the adoption of the criminal practice act by the legislature of the territory of Idaho as shown by the cases of *People v. King, supra; People v. Cronin, supra; People v. Hyndman, supra; People v. Witt, supra;* and many other cases not here mentioned.

While it is true, as a general rule, that where one state adopts a statute from another state, it also adopts the decisions of that state, construing the statute, an exception to the rule seems to obtain where the courts of the state from which the statute was borrowed have repudiated or abandoned such construction. The Colorado court states the rule as follows:

"The rule that courts are bound to adopt the prior judicial construction given a borrowed statute in the state from which it is taken is not inflexible. Where such construction was clearly erroneous, harsh and oppressive, or where it is inconsistent with the spirit and policy of the laws of the state borrowing the statute, courts may, and frequently do, decline to follow it. It can hardly be seriously contended that the rule should control in a case like the one at bar, where the supreme court has repudiated and abandoned its own construction." (*Dwyer v. Smelter City State Bank,* 30 Colo. 315, 70 Pac. 323; *Oleson v. Wilson,* 20 Mont. 544, 63 Am. St. 639, 52 Pac. 372; *Coad v. Cowhick,* 9 Wyo. 316, 87 Am. St. 953, 63 Pac. 584; 2 Lewis' Sutherland Stat. Con., sec. 404.)

From the foregoing it would seem that this court is not bound to follow the earlier California cases prescribing the essential elements of an indictment for murder, but is at liberty to fol-

low the later California cases and the rule hitherto announced by this court.

Informations charging murder in manner and form as alleged in this case have been held to be sufficient under statutes the same or similar to ours in the following cases: *Molina v. Territory,* 12 Ariz. 14, 95 Pac. 102; *State v. Nielson,* 38 Mont. 451, 100 Pac. 229; *State v. Hayes,* 38 Mont. 219, 99 Pac. 434; *Strickland v. State,* 19 Tex. App. 518; note to *Shaffer v. State,* 3 Am. St. 281.

I have examined with care the case of *State v. Smith,* 25 Ida. 541, 138 Pac. 1107, and do not hesitate to state, that in my opinion it does not correctly state the law governing the sufficiency of an information or indictment charging murder; that it is not supported by the great weight of modern authority, or supported as authority in testing the point raised in the instant case; that it cannot be so considered in the light of the authorities considered in this opinion, nor under the plain construction and interpretation of our statute, nor with due regard to the proper, certain and efficient administration of the law, and in so far as the rule there announced might be regarded as a precedent in testing the sufficiency of an information or indictment charging murder, the case should be overruled.

I dissent from that portion of the opinion which discusses the alleged erroneous instructions and upon which this case is reversed. There is no assignment of error in appellant's brief predicated upon the giving of either of these instructions. There is no specification of error based thereon in the transcript or bill of exceptions. The point was not urged upon appellant's motion for a new trial, nor was it urged upon the oral argument before this court. On the contrary, it affirmatively appears on page 31 of the appellant's brief that there never was any intention on the part of appellant to predicate error upon the giving of any instructions. I quote from appellant's brief as follows: ·

"The court instructed the jury fully on all of these matters and *there was no objection to the instructions of the*

*court on either side, it being conceded and agreed that they were· correct and proper. . . . . "* (Italics ours.)

This court has uniformly adhered to the rule that where errors are not assigned, they will not be reviewed. And it is further well settled that even where errors are assigned, if they are not discussed either in the brief or upon oral argument and no authorities are cited in support of the assignments, they will neither be reviewed, considered nor discussed by this court. (*Farnsworth v. Pepper,* 27 Ida. 159, 148 Pac. 48; *Davenport v. Burke,* 27 Ida. 464, 149 Pac. 511; *State v. McGann,* 8 Ida. 40, 66 Pac. 823; *State v. Wetter,* 11 Ida. 433, 83 Pac. 341; *State v. Jones,* 28 Ida. 428, 154 Pac. 378. See, also, *Rice v. People,* 55 Colo. 506, 136 Pac. 74; *People v. Stein,* 23 Cal. App. 108, 137 Pac. 271; *People v. Valencia,* 27 Cal. App. 407, 150 Pac. 68; *State v. Kakarikos,* 45 Utah, 470, 146 Pac. 750; 12 Cyc. 875.)

Under such circumstances I cannot bring myself to believe that it is proper for this court to assign and discuss errors for an appellant which he expressly waived, abandoned and failed to assign as error. I find no precedents in our decisions in support of such procedure. The presumption is that if the errors had been called to the attention of the trial court, they would have been corrected before the instructions were given. A defendant in a criminal case ought not to be permitted to sit idly by while prejudicial error is being committed and speculate upon the result of the verdict. (*State v. Baker,* 28 Ida. 727, 156 Pac. 103.)

Where the evidence in a given case clearly shows the defendant to be guilty of an unprovoked murder, without any justification or excuse, and the jury could not, under their oaths, have brought in any other verdict than was rendered by them, even conceding that there is error in the instructions, and the right of the appellate court to review such errors when not assigned, the judgment of the trial court should not be reversed, for the reasons as announced in an opinion by the late Justice Stewart, in the case of *State v. Marren,* 17 Ida. 766–790, 107 Pac. 993, 1001:

"Although the instruction referred to contains matter which should not have been given to the jury, we are, however, of the opinion that the appellant could have been in no way prejudiced by the giving of such instruction. Other instructions were given to which no exception was taken, which clearly charged the jury with reference to circumstantial evidence; and not only that, but the evidence in this case is so clear and convincing of the guilt of the appellant that the jury could in no possible manner have been influenced to return a verdict of guilty by the objectionable matter contained in this instruction; and from the evidence, the jury could not, without a violation of their oaths, fail to have found the defendant guilty, and because of this, the defendant could not have been prejudiced by the giving of such instruction.

"Rev. Codes, sec. 8070, admonishes this court: 'After hearing the appeal, the court must give judgment without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties.' And again, Rev. Codes, sec. 8236: 'Neither a departure from the form or mode described by this code in respect to any pleading or proceeding, nor an error or mistake therein, renders it invalid, unless it has actually prejudiced the defendant, or tended to his prejudice in respect to a substantial right.' The substance of these statutory provisions is that a new trial ought never to be granted, notwithstanding some mistake or even misdirection by the judge, provided the revisioning court is satisfied that justice has been done and that upon the evidence no other verdict could possibly have been found. [Citing cases.]"

In *State v. Silva*, 21. Ida. 247–257, 120 Pac. 835–839, it is said: "That if the evidence of the defendant's guilt is satisfactory, that is, such as ordinarily produces a conviction in an unprejudiced mind, beyond a reasonable doubt, and the result could not have been different had the instruction been omitted, the case would not be reversed because of such erroneous instruction."

In *State v. Brill,* 21 Ida.´ 269–275, 121 Pac. 79, 80, this court says: "That even though an instruction is erroneous and ordinarily the error would be material, yet if the evidence of the defendant's guilt is satisfactory, that is, such as ordinarily produces moral certainty, or conviction in an unprejudiced mind, and the result would not have been different had the instruction been omitted, the case will not be reversed because of such erroneous instruction."

The judgment of the trial court should be affirmed.

MORGAN, J., Concurring in Part.—I concur in all of the foregoing opinion except that portion holding the information to be sufficient,—from that portion I dissent.

While this court has repeatedly stated, in effect, that an indictment or information is sufficient which charges an offense in the language of the statute defining it, I believe that in doing so it has inadvertently fallen a little short of correctly stating a sound principle of law rather than that it has deliberately attempted to announce a new rule of pleading in criminal cases. It is said in 22 Cyc. 339: "Although the rule is frequently stated to be that it is sufficient to charge a statutory offense in the language of the statute creating it, such rule is accurate only in those cases in which the statute defines and describes the offense, and is better stated with such qualification. The words of the statute must fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished, and must state all the material facts and circumstances embraced in the definition of the offense. . . . . "

"The same certainty is required in indictments on statutes as at common law, and where the statute does not define the act or acts constituting the offense so as to give the offender information of the nature and cause of the accusation, other averments conveying such information must be added, even when the offense is not capital. The indictment must also be framed with such certainty that a judgment may be pleaded in bar to any subsequent prosecution for the same offense."

The territory of Idaho, in 1864, adopted the criminal practice act of California, which had been enacted by the legislature of that state in 1851. According to a well-established rule of statutory construction our legislature is held to have enacted this law with full knowledge of the interpretation which the supreme court of that state had placed upon it and with the intent that it be so construed here. Of course any interpretation placed upon the law by the California court subsequent to the date of its enactment by the legislature of Idaho would not, if contradictory of its former decisions, have any binding effect upon this court.

The act of the territorial legislature of 1864, above referred to, has been re-enacted in the state of Idaho, and the part thereof by which the sufficiency of this information must be tested is to be found in secs. 7677, 7678, 7679, 7686 and 7687, Rev. Codes, the language of which is practically identical with sections 237, 238, 239, 246 and 247 of the California criminal practice act of 1851.

Sec. 7677 provides: "The indictment (or information) must contain . . . .

"2. A statement of the acts constituting the offense in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended."

The following form is provided in sec. 7678:

"The State of Idaho against A. B., in the District Court of the —— Judicial District, in the County of ——, —— Term, A. D., nineteen ——:

"A. B. is accused by the grand jury of the County of —— by this indictment, of the crime of (giving its legal appellation, such as murder, arson, or the like), committed as follows:

"The said A. B., on the —— day of ——, A. D. nineteen ——, at the County of ——, (here set forth the act or omission charged as an offense)."

Sec. 7679 is: "It must be direct and certain as regards:

"1. The party charged;

"2. The offense charged;

"3. The particular circumstances of the offense charged, when they are necessary to constitute a complete offense."

Sec. 7686 is, in part, as follows: "The indictment (or information) is sufficient if it can be understood therefrom: . . . .

"6. That the act or omission charged as the offense is clearly and distinctly set forth in ordinary and concise language, without repetition, and in such a manner as to enable a person of common understanding to know what is intended;

"7. That the act or omission charged as the offense is stated with such a degree of certainty as to enable the court to pronounce judgment upon conviction, according to the right of the case"; and sec. 7687 is as follows: "No indictment (or information) is sufficient, nor can the trial, judgment or other proceeding thereon, be affected, by reason of any defect or imperfection in matter of form, which does not tend to the prejudice of a substantial right of the defendant upon its merits."

The supreme court of California construed the criminal practice act of that state, as applied to homicide cases, prior to its adoption as the law of the territory of Idaho, in the cases of *People v. Aro,* 6 Cal. 208, 65 Am. Dec. 503, decided in 1856; *People v. Wallace,* 9 Cal. 31; *People v. Cox,* 9 Cal. 33; *People v. Lloyd,* 9 Cal. 55; *People v. Steventon,* 9 Cal. 274; *People v. Dolan,* 9 Cal. 576; *People v. Judd,* 10 Cal. 314; *People v. Coleman,* 10 Cal. 334, all decided in 1858, and *People v. Miller,* 12 Cal. 291, decided in 1859.

In these cases the court held, in effect, that the California legislation upon the subject, while intended to remove the useless technicalities in criminal pleading which had encumbered the common law and had frequently resulted in defeating the ends of justice, had wrought no material change in the requirements of an indictment except in the manner of stating the matter still recognized as necessary to be therein contained; *that the necessity for a statement of the facts and circumstances constituting the offense still existed* and was "recognized by the 237th section of the statute, which provides that the indictment shall contain 'a statement of the acts constituting the offense, etc.,' as well as the precedent

given in the statute which points out how such facts shall be charged." That in indictments for murder a statement of the manner of the death and the means by which it was produced was necessary, so that the defendant might know of what crime he was accused and be enabled to prepare his defense on the facts; also in order that the jury might be warranted in its finding, the court in its judgment, and the defendant be enabled to successfully plead a former conviction or acquittal in the event of his being again prosecuted for the same act. With this construction in view our legislature enacted the law above quoted and, as above indicated, these decisions should have more than persuasive influence upon us in construing the law under consideration, for they are declaratory of the intent of our legislature in enacting it.

In the year 1865, after the legislature of the territory of Idaho had adopted the criminal practice act, the supreme court of California decided the case of *People v. King,* 27 Cal. 507, 87 Am. Dec. 95, referred to in the foregoing opinions, which has since been frequently cited as an authority by that and some other courts. A part of the opinion in that case, often quoted, is as follows: "If the defendant is guilty, he stands in need of no information to be derived from a perusal of the indictment, as to the means used by him in committing the act or the manner in which it was done, for as to both his own knowledge is quite as reliable as any statements contained in the indictment. If he is not guilty, the information could not aid in the preparation of his defense."

Following the King case the supreme court of California has held accusations like the one here under consideration to be sufficient (*People v. Murphy,* 39 Cal. 52; *People v. Weaver,* 47 Cal. 106; *People v. Alviso,* 55 Cal. 230; *People v. Hong Ah Duck,* 61 Cal. 387; *People v. Hyndman,* 99 Cal. 1, 33 Pac. 782; *People v. Delhantie,* 153 Cal. 461, 125 Pac. 1066), as has also the courts of Montana and Arizona. (*Molina v. Territory,* 12 Ariz. 14, 95 Pac. 102; *State v. Hayes,* 38 Mont. 219, 99 Pac. 434; *State v. Nielson,* 38 Mont. 451, 100 Pac. 229; *Marquez v. Territory,* 13 Ariz. 135, 108 Pac. 258.)

That one guilty of murder is possessed of knowledge of the means whereby the crime was committed, and stands in no need of being further informed upon that subject is quite clear; that one accused, and innocent, of murder, which may be committed by any means which the ingenuity of man can devise, could and should be aided, in the preparation of his defense, by the indictment, or information, the only means provided by law whereby he is to be apprised of the acts constituting the crime which he must be prepared to meet when placed upon his trial, is equally clear. No justification has been offered for the assertion that if the accused is not guilty, the allegation of a properly worded indictment, or information, could not aid in the preparation of his defense, and it may be stated with confidence none exists.

By the information in this case appellant had notice that the state would attempt to prove he did, on or about the 11th day of June, 1915, or some time prior thereto, somewhere in Bingham county, by some means, murder the deceased. If the crime of murder is sufficiently charged, it might have been shown at the trial that appellant either shot, stabbed, strangled, drowned, starved or poisoned the deceased, or produced his death in any one or more of many other ways, but just what method of killing the state would rely upon and appellant must be prepared to defend against is not disclosed, nor can it be ascertained therefrom whether proof would be adduced tending to show that the murder was committed in the perpetration or attempt to perpetrate, arson, rape, robbery, burglary or mayhem, or whether appellant would be called upon to rebut proof that he personally committed the act which produced the death, or that he aided and abetted in its commission. If this information is sufficient, it would, with a change of names, dates and places, accuse Cain of having produced the death of Abel with the same impartial uncertainty with which it would, with like changes, charge every murder committed since that first homicide.

It is urged by counsel for respondent that the testimony shows the appellant killed deceased and sought to justify his act upon the ground of self-defense; that therefore he stood

in no need of being informed by the pleading of the means whereby, and the manner in which, the homicide occurred, and that none of his substantial rights were invaded by the failure to more fully allege these facts.  At the time the trial judge ruled upon the demurrer no testimony had been introduced, and the evidence cannot be read in aid of the information upon appeal, when its sufficiency has been called in question by demurrer.  Appellant was entitled to, and should have been accorded, the benefit of a presumption of innocence, and of ignorance of the means by which and the manner in which the alleged crime was claimed to have been committed, and the prosecuting attorney should have been required to charge him in such language as to apprise him of what he must be prepared to meet, and with sufficient definiteness and certainty to enable him, in case another proceeding should be taken against him for the same offense, to plead a former conviction or acquittal.  (*State v. Lottridge,* 29 Ida. 53, 155 Pac. 487.)

Decisions to the effect that one, presumably innocent, may be locked in a prison cell, be informed that he is accused of the murder of a person named, in a certain county and on or about a time stated; that he may thereafter be placed upon his trial and receive his first intimation when witnesses are produced who testify against him, as to the means by which and the manner in which he is accused of having committed the act for which his life is sought to be forfeited, are sadly out of harmony with the American idea of justice.

In *State v. Smith,* 25 Ida. 541, 138 Pac. 1107, the defendant was accused of manslaughter in the following language: "That the said defendant, Charles C. Smith, at the time and place aforesaid, did unlawfully and feloniously kill one Clara F. Foy, a human being; contrary to the form of the statute in such case made and provided."  This court, holding that accusation to be insufficient, said: "To simply charge that a person committed murder or larceny merely charges the name of the offense.  That alone is not sufficient.  It is necessary to in some way inform the party accused as to how it is claimed he committed murder, whether by shooting, by strik-

ing a blow, by drowning, poisoning, or in some other manner perpetrating the offense; or, if he committed larceny, what property he took." The court further stated: "A defendant before being placed upon trial for his life or liberty is entitled to be apprised not only of the *name of the offense* with which he is charged, but, in general terms, of the *manner* in which he is charged with having committed the offense. The statute is plain and explicit in this respect."

That opinion correctly states the law applicable to that case and this one, and I regret to see it overruled.

The weight of the opinion of this court in *State v. Sly,* 11 Ida. 110, 80 Pac. 1125, as an authority in this case, may best be tested by comparing that information with the one here under consideration. The charging part of the information in this case is to be found in the foregoing opinion of Mr. Justice Rice. In the Sly case it is as follows:

"That the said Lorenzo Payne Sly, in the county of Latah, state of Idaho, on the twenty-seventh day of January, A. D. 1904, then and there being, did then and there wilfully, unlawfully and feloniously and of his deliberately premeditated malice aforethought, kill and murder one John H. Hays, a human being, by then and there wilfully, unlawfully and feloniously, and of his deliberately premeditated malice aforethought, shooting at and against the body and person of the said John H. Hays, with a certain gun then and there loaded with gunpowder and leaden bullet, and which said gun he the said Lorenzo Payne Sly, then and there held in his hands."

While it is true this court, in that case, gave expression to the *obiter dicta* quoted and relied upon in the foregoing opinion of Mr. Justice Rice, in view of the manifest sufficiency of that information, the case ought not to be relied upon to sustain an accusation which is manifestly insufficient.

The supreme court of Kentucky, in case of *White v. Commonwealth,* 9 Bush (Ky.), 178, having under consideration an indictment, the charging part of which is almost identical with that of the information in this case, and construing the provisions of the Kentucky Code relative thereto, which are quite similar to our law upon the subject, held the accusation to be

insufficient, and that an indictment ought to charge the accused with a particular offense by properly specifying the facts constituting it. (See, also, *Edwards v. State,* 27 Ark. 493; *Guedel v. People,* 43 Ill. 226; *Shepherd v. State,* 54 Ind. 25; *Arrington v. Commonwealth of Virginia,* 87 Va. 96, 12 S. E. 224, 10 L. R. A. 242.)

Sec. 8070, Rev. Codes, quoted in *State v. Marren,* 17 Ida. 766–790, 107 Pac. 993, wherein it is sought to direct this court as to what it shall consider and what it shall disregard when passing upon appeals in criminal cases, is clearly violative of sec. 13, art. 5, of the constitution, which provides: "The legislature shall have no power to deprive the judicial department of any power or jurisdiction which rightfully pertains to it as a co-ordinate department of the government; but the legislature shall provide a proper system of appeals, and regulate by law, when necessary, the methods of proceeding in the exercise of their powers of all the courts below the supreme court, so far as the same may be done without conflict with this constitution." Furthermore, the right to trial by jury, mentioned in sec. 7, art. 1 of the constitution, means a trial free from prejudicial error by a jury which has not been misdirected by the court as to the law governing the case. Such a trial is guaranteed alike to the innocent and the guilty, and it is not within the province of this court to condemn a man who has not been properly convicted by a tribunal having jurisdiction to determine the facts.

Quotations from the cases of *State v. Marren, supra, State v. Silva,* 21 Ida. 247–257, 120 Pac. 835, and *State v. Brill,* 21 Ida. 269–275, 121 Pac. 79, have no proper place here. In each of those cases the judgment of conviction was affirmed, so probably no real harm resulted from the observations of the court relative to the guilt of the defendants. However, had the cases been reversed and new trials ordered, and had the court indulged in discussions having a tendency to prejudice the minds of prospective jurors against the defendants, and thus to deprive them of fair and impartial trials, we would have searched in vain for an excuse for its conduct.